JOHN CLAFLIN ET AL., PLAINTIFFS-APPELLANTS, v. ROSE WOLFF, EXECUTRIX, ETC., DEFENDANT-RESPONDENT.

Argued March 15, 1915—Decided November 15, 1915.

1. Section 17 of the Bankruptcy act of 1898, as amended, provides that "a discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as * * * (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." *Held*, that in a suit against the bankrupt, subsequent to his discharge, upon a debt existing at the time of the filing of the petition, the production of a certified copy of the order of discharge makes a *prima facie* defence, and the burden is cast upon the plaintiff to show that his debt came within the exceptions.

2. In the bankrupt's schedule the judgment creditor and its judgment were scheduled as follows: H. B. Claflin & Co., N. Y. City, judgment December 12/89, $1,583.72; whereas the evidence showed that the judgment was obtained March 4th, 1898, for $2,300. *Held*, (1) that whether or not the use of initials and omission of street address are insufficient will almost invariably depend upon extrinsic circumstances, and that under the evidence in this case the use of initials and omission of the street address were sufficient; (2) that the erroneous statement as to the amount of the judgment and the time of its entry were of no importance, since it was not pretended that the judgment sued upon and the one scheduled were not identical, and hence they were properly treated as identical by the trial judge.

3. The referee in bankruptcy is charged by the Bankruptcy act with the duty to examine all schedules and lists of creditors, and cause such as are incomplete or defective to be amended; it will, therefore, be presumed, nothing appearing to the contrary, that the referee adjudged the address sufficient.

4. The Bankruptcy act imposes the duty of mailing notices to creditors on the referee in bankruptcy, and it will be presumed, in the absence of anything appearing to the contrary, that the officer properly performed that duty.

5. The mere fact that a creditor denies that he received notice, or had notice in the bankruptcy proceedings in time to prove his claim, is not conclusive that the statutory notice was not given, or that he had no actual knowledge of such proceedings, in the face of a record of the United States Court that such notice was given.

On appeal from the Essex Circuit Court.

For the plaintiffs-appellants, *Merritt Lane.*

For the defendant-respondent, *Riker & Riker* (*Spaulding Frazer,* of counsel).

The opinion of the court was delivered by

KALISCH, J. On the 4th day of March, 1898, a judgment for $2,890.53 damages and costs, against David Wolff was entered in the Essex County Circuit Court, in favor of John Claflin, Edward E. Ames, Horace J. Fairchild and Daniel Robinson, trading under the firm name of H. B. Claflin & Company.

On the 2d day of June, 1902, David Wolff, the judgment debtor, was adjudged a bankrupt in the United States District Court, for the District of New Jersey, and subsequently, on the 8th day of September, 1902, he received his discharge in that court.

In the schedule filed by the bankrupt, H. B. Claflin & Company, the judgment creditor and its judgment are scheduled as follows: "H. B. Claflin & Co., N. Y. City, judgment, December 12/89, $1,583.72."

David Wolff is deceased and the respondent is his executrix.

In July, 1913, the appellants commenced their action in the Essex County Circuit Court against the respondent upon the judgment recovered by them against David Wolff, on the 4th day of March, 1898.

The respondent pleaded the discharge in bankruptcy of David Wolff as a bar to the appellants' right to a recovery against the estate, to which the appellants replied that they had no notice of the pendency of the bankruptcy proceedings, and further that they were not duly scheduled by the bankrupt on the schedule filed by him.

The record before us shows that before answer was filed the appellants asked leave to amend their summons and complaint by striking out as parties plaintiffs Edward E. Ames, Horace J. Fairchild and Daniel Robinson, and to proceed in the names of John Claflin and Dexter N. Force, surviving

partners of the firm of H. B. Claflin & Company, which leave was granted.

The record further discloses that before the case came on for trial interrogatories were served upon the appellants by the respondent.

The first interrogatory inquired of the appellants when they or any of them had actual notice of the bankruptcy proceedings, to which the answer was, November 6th, 1913.

The second interrogatory was, "Did not the plaintiffs at the time of said bankruptcy proceedings receive mail at their place of business in New York, addressed to Claflin & Co., New York City? To this inquiry the appellants answered, "Yes, also Claflin Thayer & Co., N. Y."

The third interrogatory was as follows: "Was not there delivered by mail at the place of business of said plaintiffs a notice of the first meeting of creditors in the matter of David Wolff, bankrupt?" This inquiry the appellants answered as follows: "We have no record or knowledge of receiving any such notice. We keep full records of all notices received, and it is our invariable custom when such notices are received to make proof of our claim and cause the same to be filed. We filed no proof of claim in this matter. It is our best information and belief that no such notice or any notice in this matter was received by us."

It is to be observed in this connection that the answers to the interrogatories are those of the two surviving partners.

It further appears that the case was, by consent, tried before Judge Dungan, sitting without a jury.

The appellants offered no testimony and their counsel made the following statement to the court: "I rest upon the pleadings which set forth the judgment, which is admitted by the answer; and there is a plea in the answer of discharge in bankruptcy. To that there is a reply that H. B. Claflin & Company were not duly scheduled. The method of scheduling is set forth in the reply, and in the answer preceding the reply they set forth that we had actual knowledge."

The defence thereupon offered in evidence the discharge in bankruptcy of David Wolff and a certified copy of the sched-

ule filed by the bankrupt which were admitted over the objection of counsel for appellants, who based his objection on the ground that the testimony was immaterial and irrelevant in that the debt of the appellants was not properly scheduled.

The defence also offered in evidence a copy of proof of mailing of notice of discharge to all creditors, in accordance with the order made by the District Court, which was admitted by the trial judge over the objection of counsel for appellants, who stated that he did not base his objections on the ground that it is not properly proved, but on the ground that the creditor was not properly scheduled, and that the notice itself is immaterial and irrelevant.

The defence then offered in evidence the bankruptcy schedule showing the mailing of the notice of first meeting of creditors to the creditors named in the schedule, including the plaintiffs.

Counsel for appellants made no objection to the admission of that schedule in evidence, but requested that the clerk who made the entries be called to the witness-stand. Thereupon, the defence called Bertha Vanderhoof, who testified that she was in the employ of the referee in bankruptcy in 1902, and that her duties in reference to bankruptcy matters were to mail notices of all meetings to all creditors that were scheduled in bankruptcy cases, and after having her attention specifically called to an entry under date of June 6th in the bankruptcy schedule, which was as follows: "Mail copies of notices of meeting of creditors to creditors named in the schedule," she was asked whether by referring to that entry her memory was refreshed so that she could say whether such notices were mailed or not, answered, "Yes, such notices were mailed."

This witness further testified:

"*Q.* Now, I call your attention to the schedule in this case and especially to the entry of H. B. Claflin & Co., N. Y. City, judgment December 12th, 1889, $1,583.72. Was there a notice mailed to that firm?

"*A.* This is a copy of the schedule.

"*Q.* This is the schedule?

"*A.* Yes, a notice was mailed to that firm.

"*Q.* In accordance with the schedule?

"*A.* In accordance with the schedule."

Upon cross-examination the witness admitted that she could not testify to actually mailing them, but that she prepared them and sealed them ready for mailing, but whether she took them to the post-office she could not say. She further testified that her testimony was entirely based on the record and that she made the record. And she was further asked upon cross-examination:

"*Q.* And how soon after the notices were mailed?

"*A.* The same day."

Counsel for appellants then moved to strike out the testimony of the witness and the record of the book, on the ground that it does not appear that H. B. Claflin & Company were duly scheduled, which motion was denied.

Counsel for defence and appellants offered the interrogatories and their answers above set forth in evidence, and also four interrogatories and their answers which were served upon the appellants some time after the first set of interrogatories had been served and answered. One of these interrogatories was: "Did not said plaintiffs upon its bill heads state its address as New York, without further designation by way of street address or street number? If so, was not this the practice of the plaintiffs prior to and at the time of the institution of the bankruptcy proceedings of David Wolff, in the year 1902?" To this interrogatory the plaintiffs answered: "Yes, qualifying the answer by saying, but in all such cases the purchaser knew the street number from either a personal visit to the store or from one of the plaintiffs' business cards stating in full the street number." This latter part of the answer, upon motion of respondent's counsel, was stricken out by the trial judge as not responsive, and we think properly so.

Another interrogatory pertinent to the matter in hand was as follows: "Did not said plaintiffs upon its letter heads state its address as New York, without further designation by way of street address or street number? If so, was not this the

practice of the plaintiffs prior to and at the time of the institution of the bankruptcy proceedings of David Wolff, in the year 1902?" To which interrogatory the plaintiffs answered as follows: "The plaintiffs at all times stated their address upon their letter heads and otherwise either as New York, Church, Worth, W. Broadway and Thomas streets, or 224 Church street, New York."

When the case was closed the proof and circumstances before the court were substantially such as are above set forth.

Counsel for appellants moved for a direction of a judgment in favor of the plaintiffs for $4,766.70, being the amount of the judgment sued upon with interest to the day of trial.

This motion was based upon the grounds that the plaintiffs and their debt were not duly scheduled in the schedules of bankruptcy within the meaning of the Bankrupt act, and that the plaintiffs had no actual knowledge of the proceedings in bankruptcy sufficient to make the discharge effective.

The motion was denied and an objection was taken to the ruling of the court.

In addition thereto counsel for plaintiffs requested the trial judge to find that the proof was insufficient upon which to base a finding that the plaintiffs had actual knowledge of the bankruptcy proceedings, and that from the proofs it appeared that the plaintiffs had no actual knowledge of the bankruptcy proceedings sufficient to make the discharge effective if they were not duly scheduled. That the plaintiffs and their debt were not duly scheduled within the meaning of the Bankrupt act, and unless they had actual notice of the bankruptcy proceedings, the discharge is ineffective.

That the words "N. Y. City," given as the residence of the plaintiffs in the schedules is not a compliance with the Bankrupt act in respect to scheduling.

That the scheduling of the act as a judgment obtained December 12th, 1889, for $1,500 plus, where the judgment in fact was obtained March 4th, 1898, and was for $2,300 plus, is not a compliance with the Bankrupt act.

The trial judge not only refused each of the requests, to which refusals counsel for appellants duly objected, but

ordered a judgment in favor of the defendant, which judgment the plaintiffs have brought here on appeal.

The two questions presented for judicial settlement are: (1) Was the manner in which the plaintiffs and their debt were scheduled under the facts and circumstances of this case a substantial compliance with the requirements of the bankrupt law? (2) Was there any evidence which warranted a finding by the trial judge that the plaintiffs had notice or actual knowledge of the bankruptcy proceedings in time for proof and allowance of the plaintiffs' claim?

As to the first inquiry propounded, the contention of counsel for appellants in substance is, that the failure of the bankrupt debtor to give street and number of creditor's address in the schedule, coupled with an erroneous statement of the amount of the judgment and the date when such judgment was entered is such a want of compliance with the provisions of the Bankruptcy act so as to render a discharge in bankruptcy ineffective to operate as a discharge of such debt.

This requires an examination of the provisions of the Bankruptcy act applicable to the questions raised on this appeal.

The Bankruptcy act of 1898 was amended in 1903, after the respondent's testator's discharge which was in 1902, but since the provisions of that act pertinent to the present case are undisturbed by the amendments, for the sake of convenience, the act as amended in 1903 will be cited for reference.

Section 17 of the Bankruptcy act of 1898, as amended in 1903, provides: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." *U. S. Comp. Stat., Supp.* 1909, *p.* 1310.

There is also a requirement under subdivision 8 of section 7 which provides that the bankrupt shall prepare, make oath to and file in court within ten days * * * a list of his

creditors, showing their residence, if known; if unknown, that fact to be stated, the amounts due each of them, the consideration thereof, the security held by them if any and a claim for such exemptions as he may be entitled to.

By section 39 under subdivision 2 the referee is required to "examine all schedules of property and lists of creditors filed by bankrupts and cause such as are incomplete or defective to be amended;" and by subdivision 4 "give notices to creditors as herein provided."

Section 58, subdivision *a*, provides that "creditors shall have at least ten days' notice by mail, to their respective addresses as they appear in the list of creditors of the bankrupt, or as afterwards filed with the papers in the case by the creditors, unless they waive notice in writing," and subdivision *c* provides that "all notices shall be given by the referee, unless otherwise ordered by the judge."

By section 21, under subdivision *f*, it is provided, among other things, "that a certified copy of an order granting a discharge shall be evidence of the jurisdiction of the court, the regularity of the proceedings, and of the fact that the order was made."

This provision was construed in *Kreitlein* v. *Ferger*, reported in 238 *U. S.* 21, where Mr. Justice Lamar in the prevailing opinion of that court, in discussing the purport and meaning of the provision (on *p.* 26), says: "This provision (*p.* 21 *f*) was made in contemplation of the fact that the bankrupt might thereafter be sued on debts existing at the date of the filing of the petition in bankruptcy; and was intended to relieve him of the necessity of introducing a copy of the entire proceedings, so that he might obtain the benefit of his discharge by the mere production of a certified copy of the order."

"There are only a few cases dealing with the subject, but they almost uniformly hold that where the bankrupt is sued on a debt existing at the time of filing the petition, the introduction of the order makes out a *prima facie* defence, the burden being then cast upon the plaintiff to show that, because of the nature of the claim, failure to give notice, or

other statutory reason, the debt sued on was by law excepted from the operation of the discharge." (Cases cited.)

The facts and legal questions growing out of them, in the present case, are so similar to those which were present and disposed of in *Kreitlein* v. *Ferger, supra,* that the two cases can hardly be said to be distinguishable in principle.

Counsel for appellants in his brief relies chiefly, in support of his contention, on Kreitlein *v.* Ferger, decided by the appellate court of Indiana, reported in 97 *N. E. Rep.* 819.

This case was reversed, on appeal, by the United States Supreme Court, the opinion of which court was not reported at the time the present case was argued.

As illustrative of the precise questions raised and decided in Ferger *v.* Kreitlein a brief summary of the facts of that case becomes necessary.

Ferger sued Kreitlein in an Indiana court and obtained a judgment against him for $300 damages. This was in 1897. In 1907, ten years later, Ferger sued Kreitlein on the judgment obtained by him in 1897, in the Superior Court of Indiana. As a bar to a recovery on this judgment Kreitlein pleaded his discharge in bankruptcy in 1905.

At the trial the plaintiff introduced the judgment of 1897; testified that it had not been paid and that until lately he did not know that Kreitlein had gone through bankruptcy, having had no notice of it.

The defendant then introduced in evidence the original petition and schedules filed therewith in the bankruptcy proceedings of 1905. In the schedule, which was a statement of all creditors whose claims were unsecured, appears under the heading, "Names," "C. Ferger;" under the heading "Residence," "Indianapolis;" under the heading "Place and Date," "Indianapolis, 1895;" under the heading "Nature," "Merchandise;" under the heading "Amount," "$271.85."

The defendant then offered his discharge in bankruptcy in evidence and rested his case.

The trial court gave judgment in favor of the plaintiff, from which judgment the defendant appealed to the appellate court of Indiana, and that court held that the giving

of the initial instead of the full Christian name of the creditor and his residence as "Indianapolis," without street or number, was an improper scheduling and that the burden of proving actual notice of the bankruptcy proceeding was on the defendant; and further that the schedule of creditors in the bankruptcy proceeding shows a debt for $271.85 to C. Ferger, stated to be for merchandise and hence the burden of proof was on the defendant to show that the debt sued on was the one listed in the schedule even though it appeared in evidence that the account for merchandise was the basis of the judgment.

With these views the Supreme Court of the United States disagreed and Mr. Justice Lamar, in his opinion in the case on appeal discussing this phase of the case (on *p.* 27), says: "Ferger next insists that there is a want of identity between the debt sued on and that said to have been discharged. This contention is based upon the fact that the schedule lists an 'account for merchandise for $271 in 1895 in favor of C. Ferger,' while the present suit is on a judgment for $300 damages rendered in favor of Charles Ferger in 1897. The difference between the two amounts is probably explained by the fact that there had been an accrual of two years' interest before the judgment was rendered. Besides the books of the debtor and of the creditor may not have exactly agreed, and in the absence of fraud and injury such discrepancy would not invalidate the schedule or vitiate the effect of the discharge. Nor would the bankrupt be deprived of the benefit of the order because the debt was described as an 'account for merchandise,' rather than as a judgment into which the liability for the flour had been merged. See *Matteson* v. *Dewar,* 146 *Ill. App.* 523, where it was held not to be a fatal defect for the bankrupt to schedule the debt as an "account" even though a note had been given in settlement.

"The *prima facie* effect of the order, to relieve the bankrupt from liability on all debts prior to 1905, was not defeated because there may have been a difference between the account and the judgment. The burden of showing that there was such difference was upon the creditor, and in this case

there was not only no evidence tending to sustain such a contention, but the two claims seem to have been treated as identical in the trial court, for there the objection to the admission of the schedule was based on the contention that it referred to an account which had been reduced to a judgment in 1897."

And what are the facts in the case *sub judice?*

It was not contended that the plaintiffs' judgment and the one scheduled by the bankrupt were not identical. The debt was scheduled as a judgment. The plaintiffs' debt was a judgment. It was not pretended that the judgment scheduled as the plaintiffs' was not the one referred to in the bankrupt debtor's schedule. The plaintiffs' judgment and the one scheduled by the debtor were treated as identical by the learned trial judge. The objection made to the admission of the schedule by counsel for plaintiffs was a general one, that the debt of the plaintiffs was not properly scheduled. Such an objection was not equivalent to an objection that the judgment sued upon and the one scheduled were not identical. But be that as it may, the burden of establishing that they were not identical was upon the plaintiffs.

The difference between the two amounts in this case, as was observed by the court in the case above cited, in dealing with a parallel phase of it with the one under consideration, will probably find its explanation in the fact that there had been an accrual of interest for more than eight years before the judgment was entered and the costs added. The debtor in making out the schedule would naturally resort to his book accounts which might or might not have been as accurately kept as those of his creditors. The debtor might readily have assumed that the judgment was entered for the amount of the account as such account appeared by his books, without giving any thought to the increment of the account by way of interest and costs of suit, at the time he scheduled the amount of the judgment. It is obvious that the creditor could not be misled to his injury or suffer the least harm by an inaccurate statement of the amount due, or of the date when judgment was entered.

It is further urged by counsel for appellants that the scheduling of H. B. Claflin & Company, New York City, omitting street and number was a non-compliance with the provision of the Bankruptcy act relating to the scheduling of creditors and their debts, and hence the discharge did not operate to discharge the appellants' judgment. We are unable to perceive any legal force in this contention.

The precise contention was made in *Kreitlein* v. *Ferger, supra,* where the creditor was scheduled C. Ferger, Indianapolis, and the reasoning of Mr. Justice Lamar sustaining the legal sufficiency of such scheduling applies equally as well to the scheduling attacked in the case under consideration.

In the present case there is, however, this additional forceful circumstance that there was uncontradicted proof that H. B. Claflin & Company, the plaintiffs, on their bill heads and letter heads designated themselves and gave their address as H. B. Claflin & Company, New York City.

And furthermore we must not lose sight of the fact that section 39, subdivision 2 of the Bankruptcy act requires the referee to examine all schedules of property and lists of creditors filed by bankrupts and cause such as are incomplete or defective to be amended.

Obviously this provision was intended that the referee in bankruptcy shall judicially pass upon, among other things, the completeness of the listing of the creditors, the addresses given by the bankrupt in the schedule, and if found to be incomplete to cause the same to be amended. For it is to be borne in mind that the Bankruptcy act casts the duty of giving the various notices required to be given to creditors in the various stages of the bankruptcy proceedings upon the referee.

Whether or not the use of initials and omission of street addresses are insufficient will almost invariably depend upon extrinsic circumstances.

It is a matter of common knowledge that there are business concerns whose commercial names and places of business are known throughout the world of commerce. It would be

a superfluous task to append street number address in such cases.

Nothing appearing to the contrary it will be presumed that the referee adjudged the address of the plaintiffs sufficiently set out in the schedule. Independently of any such presumption it does appear in the record that the bankrupt knew the street address of the plaintiffs.

In discussing the effect of the use of initials and omission of street addresses in schedules filed by bankrupts, Mr. Justice Lamar, in *Kreitlein* v. *Ferger, supra* (on *p.* 33), says: "Both as to the use of initials and omission of street address the act must be given a general construction, and in the light of the fact that letters directed to persons by their initials are constantly, properly and promptly delivered in the greatest cities of the country even when the street number is not given. When it is considered that the schedule must not only include claims of recent origin, but debts which have accrued many years before, and where the creditor may have changed his residence, it becomes evident to lay down the general rule that the schedule must give the name of the creditor and the city and street number of the residence of those living in the largest cities would in a multitude of cases destroy the beneficent effect of the Bankruptcy act.

"These schedules are often hurriedly prepared, long after the date of the transaction out of which the debt grew and when books and papers, which might otherwise have furnished a fuller and more complete address, have been lost or destroyed.

"Bearing in mind the general purpose of the statute to relieve honest bankrupts, considering that the act does not expressly require the street address to be stated or the residence to be given unless known, and giving proper legal effect to the order of discharge, we hold that a schedule listing the creditor's residence as Indianapolis is, at least, *prima facie* sufficient."

We have therefore under the facts of the present case before us no hesitancy in concluding that the trial judge properly found upon the facts before him that the listing of the

plaintiffs in the schedule, H. B. Claflin & Company, New York City, was sufficient.

As another ground for a reversal of the judgment under review, counsel for appellants makes the claim that there was no proof before the trial judge that legally justified him in finding that the appellants had notice of the bankruptcy proceedings in time for proof and allowance of the appellants' debts.

We think there was ample proof before the trial judge to justify his finding that notice of the bankruptcy proceedings was given in compliance with the requirements of the Bankruptcy act.

This appeared in two ways—*first,* when the schedules and discharge in bankruptcy of David Wolff were introduced in evidence they were at least *prima facie* evidence of what they purported to show. The bankruptcy schedule under date of June 6th, 1902, contained this entry: "Mail copies of notices of meeting of creditors to creditors named in the schedule." And then there appears a record of their mailing on the same day.

The referee in bankruptcy is a judicial officer charged by law with the duty to mail the notices to the creditors of the bankrupt, at the various stages of the bankruptcy proceedings. The bankrupt debtor is bound to furnish the list of his creditors, the amount due them, and their place of residence, &c., all of which were complied with in this case.

The bankrupt debtor has nothing whatever to do with notifying his creditors of the bankruptcy proceedings; that duty, as has been said, the law casts upon the referee.

It will, therefore, be presumed, nothing appearing to the contrary, that the officer properly performed the duty devolved upon him by law.

As to the effect of the order of discharge as *prima facie* proof of notice, Mr. Justice Lamar in *Kreitlein* v. *Ferger, supra,* in discussing that phase of the case (on *p.* 26), says: "There are only a few cases dealing with the subject, but they almost uniformly hold that where a bankrupt is sued on a debt existing at the time of filing the petition, the in-

troduction of the order makes out a *prima facie* defence, the burden being then cast upon the plaintiff to show that, because of the nature of the claim, failure to give notice, or other statutory reason, the debt sued on was by law excepted from the operation of the discharge." See cases cited in the opinion.

*Second,* there was uncontradicted proof in favor of the respondent that notice of the bankruptcy proceedings was mailed to the appellants in conformity with the Bankruptcy act.

In addition to the legal presumption springing from the record there was the testimony of Miss Vanderhoof, cited above, which tended to establish that she mailed the notice to appellants, on June 6th, 1902. She refreshes her recollection from the records which she actually made at the time. Of course, after a lapse of twelve years, it was rather too much of a task for an honest witness to attempt to rely on her memory solely as to this particular instance, since it was only one of many like tasks which she was called upon to perform almost daily in the routine of business.

The only proof offered by the appellants on this point must be sought for in the answer to the third interrogatory and which is as follows: "We have no record or knowledge of receiving any such notice. We keep full records of all notices received, and it is our invariable custom when such notices are received to make proof of our claim and cause the same to be filed. We filed no proof of claim in this matter. It is our best information and belief that no such notice or any notice in this matter was ever received by us." And in their answer to the first interrogatory, where they say that they had no actual knowledge of the bankruptcy proceedings until November 6th, 1913.

It is to be observed that the answer to the third interrogatory was to the following inquiry: "Was not there delivered by mail at the place of business of said plaintiffs a notice of the first meeting of creditors in the matter of David Wolff, bankrupt?"

It is to be further observed at once that the answers can hardly be said to be responsive. The fact that they, the

appellants, have no record or knowledge of receiving any such notice, is not a denial that such notice was mailed to them or received by the person in charge of receiving the mail at that time, for the firm, and falls short of disproving that the statutory notice was mailed.

The answer made appears to be an argument why the appellants believe they had no notice of the meeting of the creditors. It appears in the case that since Wolff became a bankrupt, the appellants' firm has changed its composition and character. Three of the partners retired from the firm, and the partnership subsequently became a corporation. There is no presumption that none of the partners had not at that time notice or knowledge of the bankruptcy proceedings. If any one of them had notice or knowledge of the proceedings in bankruptcy they would all be affected by it. Whether the three partners who retired from the firm could have shed any light on the transaction does not appear.

The mere fact that a creditor denies that he received notice or had knowledge of the bankruptcy proceedings in time to prove his claim, is not conclusive that the statutory notice was not given or that he had no actual knowledge of the pendency of such bankruptcy proceedings, in face of a record of the District Court that such notice was given.

At most an issue of fact would be presented for the trial judge to determine and his finding thereon would be conclusive on us.

For the reasons given judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, TERHUNE, HEPPENHEIMER, WILLIAMS, JJ. 14.

*For reversal*—None.