In re Milo Ivan WORTHING,
Jr., Debtor.

Milo Ivan WORTHING, Jr., Plaintiff,

v.

The CONNECTICUT NATIONAL BANK
and Ronald D. Japha, Defendants.

Bankruptcy No. 205–5–79–00708.
Adv. No. 205–5–82–0402.

United States Bankruptcy Court,
D. Connecticut.

Nov. 22, 1982.

Richard D. Zeisler, Zeisler & Zeisler, P.C., Bridgeport, Conn., for plaintiff.

Ronald D. Japha, Gordon & Scalo, Bridgeport, Conn., for defendants.

ALAN H.W. SHIFF, Bankruptcy Judge.

## MEMORANDUM AND ORDER

During the trial of the above-captioned adversary proceeding the parties, through counsel, agreed that the issues to be determined by the court are as follows:

1.  Was the debt owed by the plaintiff (debtor) to the defendant, Connecticut National Bank (CNB) in the amount of $29,-071.23, discharged by the court on December 14, 1979?

2.  If that debt was discharged, was the subsequent action by the defendants, in levying against the debtor's wages, a violation of the discharge order of this court and subject to contempt sanctions?

## I.

## DISCUSSION

### (a)

### *Issue Of Dischargeability Of Debt*

It is apparent from the legislative design of Code sections 727 and 523 that Congress intended to preserve the fresh start of consumer debtors from all but certain specifically designated categories of debt. Section 727(b) states: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter..."

In this proceeding, the question of dischargeability arises under Code Section 523(a)(3). That section provides in relevant part that "A discharge under section 727 ... does not discharge an individual debtor from any debt—... (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—(A) ... timely filing of a proof of claim, unless such creditor had *notice or actual knowledge* of the case in time for such timely filing..." (emphasis added).

It is undisputed by the defendants that Schedule A–3 of the debtor's Chapter 7

petition, filed on October 2, 1979, contained the following entry as a claim of a creditor having an unsecured claim without priority: "Connecticut National Bank, 888 Main Street, Bridgeport, Connecticut—12/77— Master Charge—$2,241.15." It is also undisputed that the debtor's schedules omitted any mention of the subject debt.

■ Because the debtor failed to list the subject debt, it cannot be considered duly scheduled within the meaning of 11 U.S.C. § 521(1),[1] and consequently, the burden of proof shifts to the debtor to show that CNB had notice or actual knowledge of the case in time for the timely filing of a proof of claim.[2]

■ The debtor has made no showing that CNB had actual knowledge of the case. The debtor alternatively asserts, however, that CNB had timely notice of the case in that CNB was listed in the debtor's schedules as noted above, the clerk's office sent notice of the first meeting of creditors to all listed creditors, including CNB,[3] and the envelope containing the notice to CNB was not returned to the clerk's office.

The defendants contend that any notice sent to CNB's address, as designated in the list of creditors, was ineffective as a matter of law, since it should have been sent to CNB's Commercial Loan department at the same address.[4] The defendants further contend that the debtor failed to sustain his burden of proof on the issue of notice be-

cause an employee of CNB testified that, as far as he knew, no notice was received by his department (Commercial Loans) or by any other department at CNB. I do not agree with either of the defendants' arguments.

The debtor's failure to list CNB in such a way that the clerk's office would send notice specifically to CNB's Commercial Department does not render the notice sent to CNB defective. Although a creditor may choose to operate its business by dividing its activities into various departments, it may not use that method of operation as a shield against notice properly sent to the creditor in its name and at its place of business.

Of the cases cited by the defendants to the contrary, all but two involve a department or agency of the United States government as the improperly listed creditor.[5] These cases are distinguishable because of the special notice requirements with regard to "a debt to the United States acting through any department, agency, or instrumentality thereof." *See* Bankr.Act § 58(e); Bankr.Rule 203(g). The two cases cited by the defendants not involving departments or agencies of the United States involved departments within a state[6] or city government[7] and, thus are, at the very least, factually different from the instant case. The defendants have not presented, nor have I found, any case in which notice was deemed inadequate because a corporate creditor was sent notice at its principal

---

1. 11 U.S.C. § 521. Debtor's duties. The debtor shall—
   (1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, and a statement of the debtor's financial affairs;

2. *See Hill v. Smith,* 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419 (1923) in which the court discusses the burden of proof under Act § 17a(3) from which Code § 523(a)(3) is derived.

3. I am taking judicial notice of the fact that a Certificate of Mailing was completed for the "ORDER FOR MEETING OF CREDITORS..." That certificate provides in pertinent part:
   "The undersigned clerk in the office of the bankruptcy judge for this district hereby certifies that a copy of the document on which this stamp appears was mailed today to the bankrupt (or debtor) herein, attorney for

bankrupt (*or* debtor), all creditors named in schedules or other lists of creditors filed herein..."

4. In furtherance of its claim, CNB points to the following instructions on its promissory notes:
   "Direct any billing inquiries to Discount Dept., Conn. National Bank, 888 Main Street, Bridgeport, Conn. 06602 or Tel. 579–3277."

5. *E.g., United States of America v. Golenburg,* 175 F.Supp. 415 (N.D.Ohio 1959).

6. *State of Connecticut v. Duncan,* 37 Conn.Sup. 825, 438 A.2d 1212 (Conn.Super.Ct.App.1981).

7. *In re Landrau,* [1978–1981] Bankr.L.Rep. (CCH) para. 67,071 at 77,118 (Bkrtcy.S.D.N.Y. Aug. 18, 1978) (Summary of Opinion).

place of business without special attention having been called to a specific department of the creditor located at the same address.

■ With respect to the defendants' contention that the debtor failed to sustain his burden of proof on the issue of notice, I conclude, on balance, that the evidence adduced during trial, aided by the presumption that an item mailed was received,[8] establishes that CNB had timely notice of the case. The facts recounted above, upon which the debtor relies, carry more weight than the naked assertions of CNB's employee, disclaiming knowledge of the case. There was no suggestion that CNB's employee was responsible for opening mail sent to CNB. Nor, for that matter, was there any evidence of what generally happens to a letter mailed to CNB. Accordingly, even if it could be said that the employee's testimony effectively rebutted the presumption of receipt, his testimony fails to rebut the inference of receipt drawn from the facts in the record.[9]

For the above reasons, I conclude that the subject debt was discharged.

### (b)

### Issue Of Contempt

Having determined that the debt owed CNB was discharged, I turn to the question of whether CNB's collection efforts were in contempt of this court's discharge order. The debtor seeks an award of $1,100 as a sanction against the defendants, arguing that CNB had a duty to file a complaint to determine dischargeability before seeking recovery of its prepetition debt. The figure of $1,100 is reached by adding an attorney's fee of $1,000 incurred by the debtor in this proceeding and $100 for the pain and suffering allegedly caused the debtor by the defendants' conduct.

■ As a general proposition, since civil contempt serves a remedial purpose, willfulness in the offending party need not be shown for a finding of contempt. *Malcomb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1948). It is sufficient that the "court order violated '[is] specific and definite'" and that the offending party has knowledge of the court's order. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51 (2d Cir.) (citations omitted), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1976), *reh. denied,* 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977).

■ The order allegedly violated here derives from Code § 524 which states
> (a) A discharge in a case under this title—...
>> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor...[10]

Violation of the injunction provided by section 524 may constitute grounds for a

---

**8.** See *Standley v. Graham Production Co., Inc.,* 83 F.2d 489 (5th Cir.), *cert. denied,* 299 U.S. 593, 57 S.Ct. 115, 81 L.Ed. 437 (1936); *see generally* I. Wigmore, *Evidence* § 95 (3rd ed. 1940).

**9.** *Cf. Claflin v. Wolff,* 88 N.J.L. 308, 323, 96 Atl. 73, 79 ("The mere fact that a creditor denies that he received notice or had knowledge of the bankruptcy proceedings in time to prove his claim is not conclusive that the statutory notice was not given ... in face of the record of the district court that such notice was given."); *Beach Aircraft Corp. v. Flexible Tubing Corp.,* 270 F.Supp. 548, 558 (D.Conn.1967) (concluding in part that where seller proved it mailed documents, buyer's "unsupported denial of receipt" failed to rebut presumption of receipt); *Nassau Ins. Co. v. Murray,* 46 N.Y.2d 828, 414

N.Y.S.2d 117, 386 N.E.2d 1085, 1089 (1978) ("Denial of receipt [of cancellation] by the insureds, standing alone, is insufficient to rebut presumption" of receipt).

**10.** This section is reflected in the discharge order in this case, which provides in paragraph 3:
> "All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from commencing, continuing or employing any action, process or act to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived."

finding of contempt. *See, e.g., In the Matter of Batla,* 12 B.R. 397 (Bkrtcy.N.D.Ga. 1981); *cf. In the Matter of Gorin,* 18 B.R. 151, 153, 8 B.C.D. 1184, 1185 (Bkrtcy.D. Conn.1982) (Krechevsky, J.) (concluding, *inter alia,* that the bankruptcy court "has the authority to make an award, by way of a compensatory fine, for damages sustained by the debtor due to any violation" of the stay provided by Code § 362).

▆ Section 524, however, must be read together with sections 727 and 523. The discharge ordered under section 727(a) only releases the debtor from his dischargeable debts which, as noted above, do not include those debts excepted from discharge under section 523(a). 11 U.S.C. § 727(b). Accordingly, section 524 cannot be said to enjoin efforts to collect nondischarged debts.

▆ In the instant case, the debt in question was facially excepted from discharge because it was not listed anywhere in the debtor's schedules. It was only held to be discharged after this court's conclusion that the debtor sustained his burden of proving that CNB had notice of this case. In other words, there was not a specific and definite order enjoining collection of the subject debt.

The debtor's reliance on *In the Matter of Batla, supra,* is misplaced. In that case, the court imposed contempt sanctions against a creditor for blatant violation of the discharge order. In its discussion of whether the debt was nondischargeable under Code § 523(a)(3), which appeared only in dicta, the court concluded that the debt *was* duly scheduled. That is not the case here.

Furthermore, even if the defendants were in technical contempt of the discharge order, the debtor has failed to show any basis for providing monetary relief. Civil contempt sanctions serve either a coercive or compensatory function, by compelling a person to obey a court's order or compensating a person for the losses sustained due to the violation of a court order. *U.S. v. United Mine Workers of America,* 330 U.S. 258, 303–304, 67 S.Ct. 677, 701, 91 L.Ed. 884

(1947). Here no coercive purpose could be served because there is no claim nor evidence that the defendants will persist in their collection efforts in face of the dischargeability determination made herein. Nor would an award of the debtor's attorney's fee be appropriate here since CNB could have challenged the discharge of its debt in which event the debtor would undoubtedly have incurred the same legal expense without any basis for reimbursement. Finally, nothing could be awarded for the debtor's alleged pain and suffering since those elements of loss are not supported by the record.

## II.

In accordance with the above memorandum, it is ORDERED that judgment enter in the favor of the plaintiff that CNB's debt is discharged and it is FURTHER ORDERED that the debtor's request for contempt sanctions is denied.