### In re TEL–A–COMMUNICATIONS CONSULTANTS, INC., Debtor.

### TEL–A–COMMUNICATIONS CONSULTANTS, INC., Plaintiff,

### v.

### AUTO–USE, Defendant.

Bankruptcy No. 5–85–00105.
Adv. No. 5–85–0054.

United States Bankruptcy Court, D. Connecticut.

June 14, 1985.

251

Robert S. Evans, Neil Crane, Evans & Baldwin, New Haven, Conn., for plaintiff.

Susan J. White, Concemi & Zipeto, Andover, Mass., for defendant.

## MEMORANDUM AND DECISION

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiff has sought and obtained a temporary restraining order [1] and a preliminary injunction from this court, restraining the defendant from transferring a 1983 Delorean automobile on a finding that such a transfer would cause the plaintiff irreparable harm.[2] The plaintiff now seeks an order for the turnover of that vehicle and sanctions which brings into focus the scope and purpose of Code sections 542(a), 363(e), 365(b), and 362(h).

---

[1]. The initial temporary restraining order was entered on April 10, 1985. An extension was granted by Hon. Robert C. Zampano, United States District Judge, on April 19, 1985. A second extension was granted by this court on April 29, 1985.

[2]. The preliminary injunction was entered on May 7, 1985.

## BACKGROUND

On February 22, 1985, the plaintiff filed a petition seeking relief under Chapter 11 of the 1978 Bankruptcy Code, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. No. 98-353). At that time, the plaintiff was the lessee and in possession of the vehicle, and the defendant was the assignee-lessor. On or about April 3, 1985, the defendant caused the vehicle to be repossessed,[3] and while the parties were not in total agreement as to the time and context of each post petition communication between them, the defendant's president admitted during testimony at this proceeding that he knew that the plaintiff had filed a bankruptcy petition prior to the repossession.

As a consequence of the repossession, the plaintiff claims that it was put to considerable expense for loss of time by two of its executive officers in attempting to obtain the return of the vehicle, loss of business opportunities, and legal fees and costs. The defendant claims that the repossession of the leased vehicle was not a willful violation of automatic stay provided by Code § 362(a), but rather a justified consequence of a breach, of an alleged agreement by the plaintiff to pay back rent. The defendant further claims there is no equity in the plaintiff's leasehold interest and that the plaintiff will not be able to cure past defaults and provide adequate assurance of future performance.[4]

## DISCUSSION

### A

#### Turnover

■ The plaintiff, as noted, seeks an order requiring the defendant to turn over the leased vehicle. Code § 542(a) provides, in relevant part, for the turnover of property that a trustee may use, sell, or lease under Code § 363, but in order for Code § 542(a) to apply, it must first be found that the plaintiff's interest in the vehicle is property of the estate. Moreover, since an entity that has an interest in property, which is subject to turnover, may request and obtain "adequate protection", under Code § 363(e),[5] any application of Code § 542(a) must be read with Code § 363(e). *In re R. Purbeck & Associates, Ltd.,* 12 B.R. 406, 409 (Bankr.D.Conn.1981).

■ The first level of inquiry then is whether the plaintiff's interest in the leased vehicle was property of the estate. Code § 541(a) broadly defines property of the estate to include all legal and equitable interests of the debtor in property as of the commencement of the case. Here although the plaintiff was in default on rental payments, the defendant has not claimed nor was there any evidence to support a finding that the lease was terminated prior to the filing of the plaintiff's bankruptcy petition. To the contrary, the evidence clearly demonstrated that at the time the petition was filed, the plaintiff had rights under its lease with the defendant. Specifically, the plaintiff had the right of possession of the vehicle. Accordingly, the plaintiff's leasehold interest in the vehicle was property of the estate, *In re Lewis,* 15 B.R. 643, 8 B.C.D. 528 (Bankr.E.D.Pa.1981), and the plaintiff has a right to turnover under Code § 542(a) subject, as noted, to Code § 363(e) limitations.

By its Third Affirmative Defense, the defendant asserted a Code § 363(e) request for adequate protection of its interest in the vehicle. Since the property is a leased vehicle, the interest that the defendant is entitled to have adequately protected is its ownership rights subject to the plaintiff's rights under the lease, but the defendant's

---

3. The defendant notified the plaintiff of the repossession by a letter dated April 4, 1985, Exhibit 2.

4. See 11 U.S.C. § 365.

5. Subsection 363(e) provides:
   Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

interest must be read in the context of applicable bankruptcy law. As noted, the lease had not terminated prior to the filing of the plaintiff's petition. Therefore, any right to terminate the lease, repossess the vehicle, or take any other action against the plaintiff which the defendant might have had prepetition were expressly prohibited by the automatic stay under Code § 362(a). However, notwithstanding the automatic stay, the defendant is still entitled to adequate protection.

While assumption of the lease in this proceeding may not be presumed, it is apparent that unless the plaintiff intended to assume the lease under Code § 365(b), it would not have so vigorously sought to restrain the defendant from transferring the vehicle, and it would not have sought the return of the vehicle in this proceeding. Thus for guidance in defining adequate protection under Code § 363(e) reference must be made to Code § 365(b).

■ Under Code § 365(b), a lessor is entitled to a form of adequate protection when a lessee in default attempts to assume an unexpired lease. Under those circumstances, the lessor is entitled to have the default cured, payment of compensation for costs caused by the default and adequate assurance of future performance under the lease.

Code § 365(b)(1)(A) requires a lessee in default to cure or give adequate assurance of a prompt cure of the entire default, both prepetition and post petition. Therefore protection under Code § 363(e) which does less may be inadequate. *In re Inn at Longshore, Inc.*, 32 B.R. 942, 944, 10 B.C.D. 1358, 1360 (Bankr.D.Conn.1983). As this court observed in *Longshore:*

> It would appear to be incongruous that the Code would require a tenant to cure all defaults in order to assume or assign a lease [under Code § 365(b)(1)(A) ] but that adequate protection to prevent termination of a stay under 362(d)(1) or termination of the use of the premises

under 363(e) could be accomplished by less.

*Id.* 32 B.R. 944, 10 B.C.D. 1360. The same observation appears to be valid in the context of this turnover litigation.

■ The plaintiff offered testimony to the effect that its president had recently loaned the debtor a substantial sum of money (approximately $20,000.00) and that, pursuant to Code § 365(b)(1)(A), it could and would cure all defaults under the lease,[6] including the obligation to obtain and keep in force all required insurance coverage. No evidence was offered as to any costs the defendant would be entitled to under Code § 365(b)(1)(B). As to the plaintiff's obligation to provide adequate assurance of future performance, under Code § 365(b)(1)(C), the plaintiff apparently relies upon its anticipated reorganization. A determination of the adequacy of that tender must await the outcome of a future confirmation hearing. I am, however, persuaded at this point that the plaintiff has satisfied Code § 363(e), particularly since funds to satisfy all defaults to date may be provided by an order under Code § 362(h). Accordingly turnover under Code § 542(a) should be ordered.

## B
### Sanctions Under Code § 362(h)

■ Unlike sanctions for civil contempt which merely require, as a condition precedent, that a specific and definite court order be violated by a party that has knowledge of the court's order, *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51 (2d Cir.), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1976), *reh'g denied,* 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977), *In re Worthing,* 24 B.R. 774, 9 B.C.D. 1135 (Bankr.D. Conn.1982), sanctions under Code § 362(h) require the conduct of the offending party to be willful. As provided by subsection (h):

---

6. Defendant's Exhibit B is a Demand Notice, dated February 18, 1985, four days prepetition, and asserts the "total amount due: $865.60, plus

any payments coming due after the date of this notice."

An *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. (emphasis added)

■ The initial question then is whether or not Congress intended the subsection (h) sanctions to apply only in favor of *individual* debtors as the language of that subsection literally provides. I think not. Subsection (h) must be read with the rest of Code § 362. A reading of that subsection suggests no basis for such a narrow construction. On the contrary, the automatic stay provided by Code § 362(a) was intended to give all debtors broad relief from all entities. As the legislative history of Code § 362 states:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

House Report No. 95–595, 95th Cong., 1st sess. 340–2 (1977); Senate Report No. 95–989, 95th Cong.2d sess. 54, 55 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5840, 6296–6297. It seems highly unlikely that only individual debtors were meant to have a remedy against those who willfully violate the automatic stay designed to protect all debtors. There is no legislative history to suggest that result and, moreover, the defendant has not claimed such a narrow reading of subsection (h).

Instead the defendant has sought to excuse the repossession of the vehicle by claiming that its action was not a willful violation of the automatic stay but rather a justified procedure after the plaintiff's failure to pay rent. The defendant's position in that regard is untenable.

7. Subsections 362(c) and (d).

The automatic stay remains in effect until it is terminated by the court or by operation of law.[7] Whether or not the defendant believed it was justified in repossessing the vehicle is of no consequence here. The fact remains that the automatic stay intervenes upon the filing of the plaintiff's bankruptcy petition and all that is necessary to trigger the subsection (h) sanctions is (1) that the defendant's action violated the stay and (2) that such action was willful.

There is no question but that the defendant's action in repossessing the vehicle violated the automatic stay. Code § 362(a)(3) provides in relevant part:

> ... a petition filed under section 301 ... of this Title ... operates as a stay applicable to all entities, of—
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

The defendant admittedly caused the repossession of the leased vehicle, the right to possession of which was property of this debtor's estate. It therefore follows without question that the defendant's action violated the automatic stay.

In determining whether the defendant's conduct was willful, reference is made to similar language in the Code which has been the subject of judicial construction. In the context of Code § 523(a)(6), which relates to the nondischargeability of debts caused by the willful and malicious injury by the debtor to the person or property of another entity, courts have construed willful to mean intentional or deliberate. *Matter of Langer*, 12 B.R. 957, 959, 7 B.C.D. 1323, 1324 (D.N.D.1981), *In re Stanfield*, 14 B.R. 180, 8 B.C.D. 170 (Bankr.N.D.Oh. 1981); *In re Glazer*, 25 B.R. 329, 330, 10 B.C.D. 178, 179 (BAP 9th Cir.1982). *See also* Legislative History of Code § 523(a)(6) which states that willful means deliberate or intentional. H.R.Rep. No. 96–595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978).

Notwithstanding the defendant's claim that it acted in the good faith belief that post petition repossession was justified, the facts here clearly demonstrate that the defendant's agents not only acted intentionally but also with arrogant defiance of federal law. Sanctions under Code § 362(h) are therefore mandatory, and in this instance, punitive damages are appropriate.

Evidence presented by the plaintiff demonstrated that two of its officers, Duncan Haile and Kenneth Dinese, spent a minimum of 84 hours in the aggregate attempting to secure the return of the leased vehicle. Based upon their testimony regarding their respective salaries, $1,250.00 is an appropriate award of damage for the lost time of those employees.

The plaintiff's attorneys, Robert S. Evans and Neil Crane, testified that they spent 27.1 hours and 75.9 hours respectively, preparing for and participating in this proceeding. I find that the amount of time spent was reasonable, and based upon their customary hourly rate which I find to be appropriate under the circumstances here, attorney's fees of $3,387.50 for Attorney Evans and $5,692.50 for Attorney Crane are awarded. In addition the attorneys testified that they expended $250.00 and that amount may also be recovered.

Evidence was offered in an attempt to demonstrate a loss of revenue and profits due to the repossession of the leased vehicle, but that claim is speculative and will not be allowed.

Finally, the plaintiff claims that punitive damages should be ordered, and I agree. Plaintiff's Attorney Crane's essentially unrefuted testimony convinces me that the defendant's president, Michael Cook, had actual knowledge that the plaintiff had filed a bankruptcy petition before and at the time he ordered the vehicle to be repossessed. Indeed a rather profane expletive, attributed to Mr. Cook by Attorney Crane (and not denied by Mr. Cook), provides an ample basis for concluding that the defendant's president had little regard for the authority of bankruptcy law. Instead of obeying the law, even after being informed by Attorney Crane, the defendant, by a deliberate and arrogant act of defiance, caused the repossession of the leased vehicle. As a consequence, the plaintiff, which had sought the protection of federal law, was put to significant expense and inconvenience and its personnel, who were needed in its reorganization effort, were diverted to the task of recovering the vehicle. Accordingly, I find that punitive damages are appropriate and allow $1,000.00 for that purpose.

Judgment may enter accordingly.