Reversed and Remanded in Part and
Reversed and Rendered in Part and Opinion filed September 21, 2010.



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00950-CV



 

GALVESTON INDEPENDENT SCHOOL DISTRICT, Appellant

V.

CLEAR LAKE REHABILITATION
HOSPITAL, L.L.C., Appellee

 



On Appeal from the 55th District
Court

Harris County, Texas

Trial Court Cause No. 2008-14504



 

OPINION

Clear
Lake Rehabilitation Hospital, L.L.C. (“Clear Lake”) filed suit against
Galveston Independent School District (“GISD”), alleging breach of contract and
violation of the federal Public Health Service Act (“PHSA”).  GISD filed a plea
to the trial court’s subject-matter jurisdiction over these claims, which was
denied.

In four
issues, GISD contends the trial court erred (1) to the extent it determined
GISD’s act of providing medical coverage was a proprietary, instead of a
governmental, function, (2) by implicitly finding a waiver of governmental
immunity relative to Clear Lake’s breach-of-contract claim under Chapter 271 of
the Local Government Code, (3) by implicitly finding GISD waived its governmental
immunity by conduct, and (4) by failing to dismiss Clear Lake’s claim under the
PHSA.  

We
reverse that portion of the trial court’s order denying GISD’s plea relative to
Clear Lake’s breach-of-contract claim and remand for further proceedings consistent
with this opinion.  We also reverse that portion of the trial court’s order
denying the jurisdictional challenge to Clear Lake’s PHSA claim and render
judgment dismissing that claim for want of jurisdiction.

I.   Background

In
October 2006, Carlos Urroz, an employee with GISD, was placed on sick-leave
pursuant to the Family and Medical Leave Act.  On January 24, 2007, GISD sent
Urroz a letter notifying him of the requirement to pay premiums “in order to
keep coverage current.”  GISD sent a second letter on February 6, warning Urroz
that his medical benefits would cease unless his premiums were received.  The
same day, GISD instructed its third-party administrator, Houston TPA, Ltd.
d/b/a/ Trisurant (“Trisurant”), “to pend claims effective 2/1/07 until premium
is received.”  

On
February 8 and 9, Clear Lake contacted Trisurant to verify Urroz’s coverage. 
Trisurant verified Urroz’s coverage without advising that GISD had instructed
it to pend Urroz’s claims.  Thereafter, Urroz was admitted to Clear Lake and
received treatment for six weeks. 

On
February 22, GISD sent Urroz another warning letter.  On March 13, GISD
informed Urroz that his medical coverage had been cancelled, effective February
1, and that he must contact GISD “by April 2, 2007, in order to enroll in
COBRA[.]”  When Clear Lake did not receive payment for Urroz’s medical
treatment, it demanded payment from GISD.  GISD rejected Clear Lake’s demand,
explaining that it had complied with COBRA requirements.  Clear Lake alleges
that GISD considered Urroz an active employee until April 13, 2007.

Clear
Lake filed suit against GISD, Trisurant, and Urroz, alleging a variety of tort
claims.  GISD filed a plea to the jurisdiction asserting governmental
immunity.  Clear Lake amended its petition to allege only claims for breach of contract
and violations of the PHSA against GISD.  Thereafter, GISD supplemented its
plea, and Clear Lake filed a response.  The trial court denied GISD’s plea, and
GISD timely filed this interlocutory appeal.

II.   Interlocutory Appeal and Standard of Review

We have
statutorily-conferred authority to review the trial court’s interlocutory order
denying GISD’s plea to the jurisdiction.  See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(8) (West 2008) (providing that a party may appeal an
interlocutory order that “grants or denies a plea to the jurisdiction by a
governmental unit . . . .”).  An appellate court must consider challenges to
the trial court’s subject-matter jurisdiction on interlocutory appeal,
regardless of whether such challenges were presented to or determined by the
trial court.  Tex. Dep’t of Transp. v. Olivares, 316 S.W.3d 89, 95
(Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing Waco Indep. Sch.
Dist. v. Gibson, 22 S.W.3d 849, 850–51 (Tex. 2000)).

We
review de novo the trial court’s ruling on a plea to the jurisdiction.  Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004). 
In a plea to the jurisdiction, a party may challenge either the pleadings or
existence of jurisdictional facts.  Id. at 226–27;
see also Rebecca Simmons & Suzette Kinder Patton, Plea to the
Jurisdiction: Defining the Undefined, 40 St. Mary’s L.J. 627, 651–52
(2009).

When a
defendant challenges the plaintiff’s pleadings, the court’s determination turns
on whether the pleader has alleged facts sufficient to demonstrate subject-matter
jurisdiction.  Miranda, 133 S.W.3d at 226.  To make
this determination, courts should glean the pleader’s intent and construe the
pleadings liberally in favor of jurisdiction.  Id.  If the pleadings do
not contain facts sufficient to affirmatively demonstrate the trial court’s
jurisdiction, but do not affirmatively demonstrate incurable defects in
jurisdiction, the issue is one of pleading sufficiency and plaintiffs should be
afforded an opportunity to amend.  Id. at 226–27.  If the
pleadings affirmatively negate jurisdiction, a plea may be granted without
allowing plaintiffs an opportunity to amend.  Id. at 227.  The
opportunity to amend pleadings that are insufficient to establish, but do not
affirmatively negate, jurisdiction arises after a court determines the
pleadings are insufficient.  White v. Robinson, 260 S.W.3d 463,
475–76 (Tex. App.—Houston [14th Dist.] 2008, pet. granted) (citing Tex.
A & M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 839–40 (Tex. 2007)).

When a
defendant challenges the existence of jurisdictional facts, we consider
relevant evidence submitted by the parties.  Miranda, 133 S.W.3d at
227.  We take as true all evidence favorable to the nonmovant and indulge every
reasonable inference and resolve any doubts arising from such evidence in the
nonmovant’s favor.  Id. at 228.  If the relevant evidence is undisputed
or a fact question is not raised relative to the jurisdictional issue, the
trial court rules on the plea to the jurisdiction as a matter of law.  Id. 
If the evidence creates a fact question regarding jurisdiction, the trial court
cannot grant the plea, and the issue will be resolved by the fact finder.  Id.
at 227–28.

When
resolution of an issue requires interpretation of a statute, we review under a de novo standard.  Mokkala v. Mead, 178 S.W.3d 66,
70 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  In construing a statute, our objective is to
determine and give effect to the legislature’s intent.  See Nat’l Liab.
& Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000).  If possible,
we must ascertain that intent from the language the legislature selected and
should not refer to extraneous matters for intent not expressed in the statute.  Id.  If the meaning of the statutory
language is unambiguous, we adopt the interpretation
supported by the plain meaning of the words.  St. Luke’s Episcopal Hosp. v.
Agbor, 952 S.W.2d 503, 505 (Tex. 1997).

III.   Governmental and Proprietary Functions

We begin
with GISD’s first issue in which it contends the trial court erred to the
extent it determined GISD’s provision of health insurance was not a
governmental function.

Under
our common law, governmental immunity defeats a trial court’s subject-matter
jurisdiction.  See Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex.
2004).  The proprietary/governmental dichotomy is generally used in determining
a municipality’s governmental immunity from suit for tortious conduct.  Tooke
v. City of Mexia, 197 S.W.3d 325, 343 (Tex. 2006).  “The
distinction has not been a clear one, but generally speaking, a municipality’s
proprietary functions are those conducted ‘in its private capacity, for the
benefit only of those within its corporate limits, and not as an arm of the
government,’ while its
governmental functions are ‘in the performance of purely governmental matters
solely for the public benefit.’”  Id. (footnotes
omitted).  “A municipality is not immune from suit
for torts committed in the performance of its proprietary functions, as it is
for torts committed in the performance of its governmental functions.”  Id.  

Clear
Lake contends that GISD’s provision of health insurance to Urroz was a
proprietary function for which GISD is not immune from a breach-of-contract
claim.  Clear Lake cites several cases in which courts held that a
municipality’s provision of insurance to its employees was a proprietary
function.  See Gates v. City of Dallas, 704 S.W.2d 737,
738–39 (Tex. 1986) (holding that city “acted in its proprietary role” when
it entered into a health-insurance contract with employee); Temple v. City
of Houston, 189 S.W.3d 816, 821 (Tex. App.—Houston [1st Dist.]
2006, no pet.) (“We hold that when a City provides to its employees insurance
benefits that are not required by statute, the City is performing a proprietary
function . . . .”); Bailey v. City of Austin, 972 S.W.2d 180,
193 (Tex. App.—Austin 1998, no pet.) (“[T]he City’s function of offering,
administering, and overseeing health care plans for its own employees are
proprietary functions.”).  The rationale underlying these decisions is that a
municipality acts “primarily for the benefit of those within the corporate
limits of the municipality” by providing insurance coverage for its employees. 
Gates, 704 S.W.2d at 739.         

GISD
responds that the foregoing cases apply only to municipalities, not school
districts.  GISD cites Braun v. Trustees of Victoria Independent School
District, in which the court of appeals explained,

Cities and
towns exercise a dual function, to wit, governmental and proprietary, while a school
district is purely a governmental agency and exercises only such powers as are
delegated to it by the state.  It performs no proprietary functions which are
separate and independent of its governmental powers.

114 S.W.2d 947, 950 (Tex.
Civ. App.—San Antonio 1938, writ ref’d).  Because application for writ of error
was refused, Braun has the same precedential value as an opinion of the
Texas Supreme Court[1]
and has been relied upon numerous times for the proposition that school
districts engage only in governmental functions.  See, e.g., Fowler
v. Tyler Indep. Sch. Dist., 232 S.W.3d 335, 339 (Tex. App.—Tyler
2007, pet. denied) (determining that a school district could not act “in a
sufficiently proprietary capacity to shed its . . . immunity at the time of
[an] injury); Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589,
594 (Tex. App.—Austin 1991, writ denied) (“An independent school district
is an agency of the state which carries out only governmental functions, and,
consequently, is entitled to governmental immunity.”), overruled on other
grounds by Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401 (Tex. 1997), and
superseded by statute on other grounds as stated in Gen. Servs. Comm’n v.
Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001); Gravely v. Lewisville
Indep. Sch. Dist., 701 S.W.2d 956, 957 (Tex. App.—Fort Worth
1986, writ ref’d n.r.e.) (“No Texas appellate court, so far as we know, has
ever held that a school district has served in a non-governmental capacity.”). 
In Murray v. San Jacinto Agency, Inc., the El Paso Court of Appeals
addressed a comparable situation in which a school-district employee sued the
school district for denying her coverage under a group healthcare plan.  759
S.W.2d 778 (Tex. App.—El Paso 1988), rev’d on other grounds, 800 S.W.2d
826 (Tex. 1990).  Referencing Braun, the court held “that the
establishment of the self funded group medical insurance program by [the school
district] is a governmental function and that governmental immunity applies.”  Id.
at 779–80.

          Clear Lake
contends these cases are distinguishable because they involve tort claims for
injuries that occurred while school districts were engaged in the governmental
function of furthering education, whereas the underlying case arises from a
breach of contract between a school district and hospital.  Clear Lake avers
its case is more akin to Teague v. Independent School District, where
the court held that a school district was estopped from denying liability to an
attorney who provided legal services to the school district.  233 S.W.2d 176,
180 (Tex. Civ. App.—Waco 1950, writ ref’d n.r.e.).  We do not find the
breach-of-contract versus tort claim distinction pivotal because governmental
entities regularly execute contracts for governmental purposes.  Furthermore,
as discussed in more detail in the following section, our legislature allows
certain breach-of-contract claims against public school districts.  See
Tex. Loc. Gov’t Code Ann. §§ 271.151–.160 (West 2005 & Supp. 2009).

Clear
Lake also argues several courts have implied that school districts may engage
in both governmental and proprietary functions.  In Barr v. Bernhard,
the supreme court explained, “The law is well settled in this state that an
independent school district is an agency of the state and, while exercising
governmental functions, is not answerable for its negligence in a suit
sounding in tort.”  562 S.W.2d 844, 846 (Tex. 1978) (emphasis added); see
also, e.g., Bell v. Love, 923 S.W.2d 229, 231 (Tex.
App.—Houston [14th Dist.] 1996, no writ).  Notably, the Braun opinion
includes the same language: “There can be no question but that an independent
school district is an agency of the state, and, while exercising
governmental functions, is not answerable for its negligence in a suit
sounding in tort.”  114 S.W.2d at 949 (emphasis added).  Clear Lake argues that
courts would not have included the qualifying language “while exercising
governmental functions” unless school districts had the capacity to engage in non-governmental
functions.  The same argument was presented to the First Court of Appeals.  See
McManus v. Anahuac Indep. Sch. Dist., 667 S.W.2d 275, 278 (Tex.
App.—Houston [1st Dist.] 1984, no writ).  Our sister court described the argument
as “well reasoned” but resolved the issue on other grounds.  Id.

Like the
court in McManus, we need not address the precedential effect of the Braun
opinion.  Presuming that school districts can participate in
non-governmental functions, we conclude that providing health insurance to
employees is a governmental function of a school district.  Under the Texas
Education Code, school districts are required to offer medical coverage
to all employees, whether by self-insuring or some other means.  See Tex.
Educ. Code Ann. §§ 22.004(a)–(b) (West Supp. 2009).  A city engages in
governmental functions when it “‘performs functions mandated by the state.’”  See
Temple, 189 S.W.3d at 820 (quoting Truong v. City of Houston, 99
S.W.3d 204, 210 (Tex. App.—Houston [1st Dist.] 2002)).  This rule should
likewise apply to school districts.  Furthermore, that GISD had a choice
regarding how it provided coverage does not mean its exercise of that choice
was a non-governmental function.  See Wallace v. City of Midland, 836
S.W.2d 641, 643 (Tex. App.—El Paso 1992, writ denied) (“The furnishing of
workers’ compensation coverage by one means or another by a municipality to its
employees is mandated by law and as such, the means by which the municipality
complies remains a governmental function.”).  Finally, we note that provision
of group healthcare furthers the state’s educational goals because school
districts are able to attract more-qualified employees.  Cf. Braun, 114
S.W.2d at 950 (concluding that beautifying school grounds furthers education). 
Accordingly, we hold that GISD did not exercise a proprietary function by
providing health insurance to Urroz.  GISD’s first issue is sustained.

IV.   Section 271.152 of the Local Government Code

            In its second
issue, GISD contends the trial court erred by concluding that GISD is not immune
from suit relative to Clear Lake’s breach-of-contract claim.  Clear Lake contends
that GISD’s immunity from suit has been waived pursuant to subchapter I,
chapter 271 of the Local Government Code.

Under
subchapter I, “A local governmental entity that is authorized by statute or the
constitution to enter into a contract and that enters into a contract subject
to this subchapter waives sovereign immunity to suit for the purpose of
adjudicating a claim for breach of the contract . . . .”  Tex. Loc. Gov’t Code
Ann. § 271.152 (West 2005).  “‘Contract subject to this subchapter’ means a
written contract stating the essential terms of the agreement for providing
goods or services to the local governmental entity that is properly executed on
behalf of the local governmental entity.”  Id. § 271.151(2).  “Local
governmental entity” under subchapter I includes public school districts such
as GISD.  Id. § 271.151(3)(B).

GISD argues
that “Clear Lake has not identified, and cannot identify, any written contract
between it and GISD wherein Clear Lake was obligated to provide goods or
services to [GISD].  Since no such contract exists, Chapter 271 . . . does not
apply and Clear Lake’s claims must be dismissed . . . .”  Furthermore, GISD
argues that even if a written contract between GISD and Urroz existed, Clear
Lake cannot establish “it was an intended third-party beneficiary to such a
contract.”

As an
initial matter, we note the parties assume section 271.152 permits a
third-party beneficiary to sue a local governmental entity for breach of
contract.  A third party has standing to enforce a contract when contracting
parties explicitly intend to benefit the third party.  S. Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 306 (Tex.
2007) (per curiam).  Under section 271.152, governmental immunity is waived
relative to claims for breach of contract subject to subchapter I.  See Tex.
Loc. Gov’t Code Ann. § 271.152 (“A local government entity that is authorized
by statute or the constitution to enter into a contract and that enters into a
contract subject to this subchapter waives sovereign immunity to the suit for the
purpose of adjudicating a claim for breach of the contract, subject to the
terms and conditions of this subchapter.”).  Accordingly, when a governmental
entity and a contracting party enter into a contract subject to subchapter I
and denominate a third-party beneficiary of that contract, the third-party
beneficiary’s claim for breach of contract falls within the waiver of immunity
authorized under section 271.152.  See Ben Bolt-Palito Blanco Consol.
Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins.
Fund, 212 S.W.3d 320, 327 (Tex. 2006) (“[B]y enacting section 271.152, the
Legislature intended to loosen the immunity bar so ‘that all local government
entities that have been given or are given the statutory authority to enter
into contracts shall not be immune from suits arising from those contracts.’” (quoting
House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S.
(2005))); First-Citizens Bank & Trust Co. v. Greater Austin Area
Telecomm. Network, --- S.W.3d ---, Nos. 03-09-00461-CV, 03-09-00462-CV,
2010 WL 3059304, at *5–6 (Tex. App.—Austin Aug. 6, 2010, no pet. h.) (explaining
that “section 271.152’s waiver is not limited only to suits brought by
signatory parties . . . [but applies to] a class of suits—suits for the
purpose of adjudicating a claim for breach of a contract subject to subchapter
I—without restricting which parties can bring the suit.”).

In its
live pleadings, Clear Lake alleges Urroz “was covered by GISD’s health
insurance plan,” which entitled him “to coverage while he was an active
employee.”  Clear Lake further alleges that Urroz was employed by GISD until
April 13, 2007.  Clear Lake argues that GISD’s health-insurance contract with
Urroz was a written contract “providing goods or services to the local
governmental entity” because Urroz received coverage in exchange for the
services he provided GISD as an active employee.  Interpreting the pleadings
liberally in favor of jurisdiction, we agree with Clear Lake’s argument.  Thus,
Clear Lake has sufficiently alleged that GISD and Urroz were parties to a
written contract in which they agreed to exchange services (medical coverage
for employment services) while Urroz was an active employee.

However,
Clear Lake’s allegation, “Pursuant to Clear Lake’s financial agreement with
[Urroz], and by operation of law, Clear Lake is a third party beneficiary of
[Urroz’s] insurance contract with GISD,” does not sufficiently demonstrate that
Clear Lake is a third-party beneficiary of the alleged contract between Urroz
and GISD.  There is a general presumption against third-party beneficiaries to
a contract, and the facts alleged do not support the contention that GISD and
Urroz intended to confer a direct benefit on Clear Lake.  See Lomas, 223
S.W.3d at 306; MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d
647, 652 (Tex. 1999) (expressing that absent clear indication in written
contract that parties intended to confer direct benefit to third party, third
party cannot maintain breach-of-contract action); see also H & H
Sand and Gravel, Inc. v. City of Corpus Christi, No. 13-06-00677-CV,
2007 WL 3293628, at *4 (Tex. App.—Corpus Christi Nov. 8, 2007, pet. denied)
(mem. op.) (“We do not see how H & H Sand’s allegation of unilateral
modification establishes a waiver of governmental immunity under [section
271.152’s] requirement that a contract be ‘properly executed on behalf of the
local governmental entity.’”).  Further, Clear Lake’s bare assertion that it is
a third-party beneficiary “by operation of law” does not support such standing.[2] 
Accordingly, Clear Lake’s breach-of-contract claim under section 271.152 does
not affirmatively demonstrate a waiver of GISD’s governmental immunity.

Finally, GISD presents two evidentiary arguments.  First,
GISD contends dismissal is required because (1) the record does not include the
alleged health-insurance contract between GISD and Urroz and (2) even if a
written contract between GISD and Urroz existed, Clear Lake cannot establish it
was a third-party beneficiary to the contract.  See Vantage Sys.
Design, Inc. v. Raymondville Indep. Sch. Dist., 290 S.W.3d 312, 316 (Tex.
App.—Corpus Christi 2009, pet. filed) (holding that plaintiff failed to prove
waiver of immunity pursuant to section 271.152 because it failed to produce
written contract).  However, GISD did not present an evidentiary challenge in
its plea.   Therefore, Clear Lake was not required to produce the written
contract or prove that Clear Lake was a third-party beneficiary to the
contract.  Moreover, even if GISD presented a “no-evidence” challenge regarding
the existence of the contract and Clear Lake’s third-party beneficiary status,
Clear Lake would not have had a burden to present evidence raising a fact issue
regarding such matters; under Miranda, a governmental entity’s challenge
to jurisdictional facts implicating the merits of the plaintiff’s lawsuit
mirrors traditional summary-judgment practice, not no-evidence summary-judgment
practice.  See Miranda, 133 S.W.3d at 228; see also Olivares, 316
S.W.3d at 95.

Second,
GISD argues that even if Clear Lake were a third-party beneficiary of an
insurance contract between GISD and Urroz, Clear Lake has no greater right to
enforce the contract than Urroz, who has no right to enforce the contract
because of his failure to pay the required premiums.  Because these issues
involve questions of fact not conclusively answered in the record, we must
disagree.  See Miranda, 133 S.W.3d at 227–28.  Thus, we reject GISD’s
evidentiary challenges.

Accordingly,
Clear Lake’s pleadings do not affirmatively demonstrate the trial court’s
jurisdiction over its breach-of-contract claim, but do not affirmatively negate
jurisdiction.  Therefore, we reverse the trial court’s order denying GISD’s
plea relative to Clear Lake’s breach-of-contract claim and remand for the trial
court to allow Clear Lake a reasonable opportunity to amend its pleadings.  See
Miranda, 133 S.W.3d at 226–27; see also Koseoglu, 233 S.W.3d at
839–40.

V.   Public Health Service Act

In its
fourth and final issue, GISD contends the trial court erred by concluding that
Clear Lake has standing to assert a claim under subchapter XX of the federal
Public Health Service Act (“PHSA”).  See 42 U.S.C.A. §§ 300bb-1–300bb-8 (West 2003 & Supp. 2010).

When the
United States Congress enacted the Consolidated Omnibus Budget Reconciliation
Act of 1985 (“COBRA”), it amended the PHSA by adding subchapter XX.  See
Mehmen v. Collin County, Tex., 558 F. Supp. 2d 711, 714 (E.D.
Tex. 2007).  Under subchapter XX, certain governmental entities that maintain group
healthcare plans must provide qualified beneficiaries who would otherwise lose
coverage under the plan due to a qualifying event the right to elect
continuation of their coverage.  42 U.S.C.A. § 300bb-1(a) (West 2003).  The
term “qualifying event” includes “[t]he termination . . . of the covered
employee’s employment.”  Id. § 300bb-3(2) (West 2003).  The employer
“must notify the plan administrator of a qualifying event . . . within 30 days
of the . . . event,” and the plan administrator must notify any qualified
beneficiaries of the event.  Id. § 300bb-6(2), (4) (West 2003). 
Importantly, “[a]ny individual who is aggrieved by the failure of a
[governmental entity] to comply with the requirements of the subchapter may bring
an action for appropriate equitable relief.”  Id. § 300bb-7 (West 2003)
(emphasis added).  The term “individual” is not defined in subchapter XX or in
the general definitions section of the PHSA.

GISD
contends Clear Lake lacks independent standing to seek equitable relief under
section 300bb-7 because it is a limited liability corporation and, therefore,
not an “individual.”  Clear Lake argues that any natural person or organization
aggrieved by a governmental entity’s failure to comply with subchapter XX may
seek relief pursuant to section 300bb-7.  In support of this argument, Clear
Lake cites federal authority in which the term “individual” has been
interpreted to include corporations.

In Clinton
v. City of New York, 524 U.S. 417 (1998), the United States Supreme Court
considered whether the term “individual” in a section of the former Line Item
Veto Act included corporations: “‘Any member of Congress or any individual
adversely affected’ by the Act” may bring an action contesting the
constitutionality of the Act.  Id. at 428 (quoting former 2 U.S.C. §
692(a)(1)).  The Court determined “that in the context of the entire section
Congress undoubtedly intended the word ‘individual’ to be construed as
synonymous with the word ‘person,’” a word that includes “corporations.”  Id.
at 428–29 & n.13.  The Court explained that the purpose of the section was
to authorize “prompt and authoritative judicial determination of the
constitutionality of the Act” and reasoned “[t]here is no plausible reason why
Congress would have intended to provide for such special treatment of actions
filed by natural persons and . . . [not] corporate persons.”  Id. at 42. 
Thus, the Court interpreted the term “individual” from its context within the
Line Item Veto Act. 

Other opinions
cited by Clear Lake were authored by courts interpreting the term “individual”
as prescribed in the Bankruptcy Code and Torture Victim Protection Act. 
Several courts have held that section 362 of the Bankruptcy Code, which
requires redress for “[a]n individual injured by any willful violation of a
stay,” to apply to both natural persons and corporations.  See In re Atl.
Bus. & Cmty. Corp., 901 F.2d 325, 329 (3d Cir. 1990); Budget
Serv. Co. v. Better Homes of Va., 804 F.2d 289, 292 (4th Cir. 1986); In
re Tel-A-Commc’ns Consultants, Inc., 50 B.R. 250, 253–54 (Bankr. D. Conn.
1985).  The courts derived this interpretation by considering section 362(h) in
light of the whole section, which they concluded clearly applies to all
bankruptcy debtors.  See Budget Serv., 804 F.2d at 292; In re
Tel-A-Commc’ns Consultants, 50 B.R. at 254.  Similarly, courts have held
that the section of the Torture Victim Protection Act establishing a right to
civil action against “[a]n individual who . . . subjects an individual to torture
[or] . . . to extrajudicial killing . . . ,” applies to both natural persons
and corporations that perpetrate such acts.  See Romero v. Drummond Co., 552
F.3d 1303, 1315 (11th Cir. 2008) (“[T]he Torture Act allows suits against
corporate defendants.”); Sinaltrainal v. Coca-Cola Co., 256 F. Supp. 2d
1345, 1358 (S.D. Fla. 2003) (relying on legislative history to determine
that term “individual” used in Torture Victim Protection Act includes
corporations).[3] 
Therefore, Clear Lake’s exposition of caselaw illustrates that federal courts
have construed the term “individual” to include corporations in the context of
other statutes.  However, our research reveals no case addressing whether
“individual” as used in section 300bb-7 includes corporate entities, and we
must examine the statute to determine that issue.

Reading
subchapter XX as a whole, it is clear Congress intended to protect government
employees and their beneficiaries from sudden loss of healthcare coverage
following a qualifying event such as a termination.  The terms “covered
employees” and “qualified beneficiaries” are used frequently throughout the
subchapter.  “Covered employee” is defined as “an individual who is (or
was) provided coverage under a group health plan by virtue of the performance
of services by the individual for 1 or more persons[4]
maintaining the plan[.]”  See 42 U.S.C.A. § 300bb-8(2) (emphasis
added).  “Qualified beneficiary” is defined in the subchapter as, “with respect
to a covered employee under a group health plan, any other individual
who, on the day before the qualifying event for that employee, is a beneficiary
under the plan--(i) as the spouse of the covered employee, or (ii) as the
dependent child of the employee.”  See 42 U.S.C.A. § 300bb-8(3)
(emphasis added).  Thus, those whom the subchapter was designed to assist are
defined as “individuals” in a manner applicable only to natural persons.  Other
sections of the subchapter refer to “individuals” in a similar sense. 
“Individual” in section 300bb-2(3) references disabled qualified
beneficiaries.  See 42 U.S.C.A. § 300bb-2(3).  There are several
references to the term “TAA-eligible individuals,” which is defined in the
Internal Revenue Code in a manner only appropriate to natural persons.  See 42
U.S.C.A. § 300bb-5(b)(4); 26 U.S.C.A. § 35(a), (c) (West Supp. 2010). 
Moreover, the language in section 300bb-6(4) expresses, “[N]otification to an individual
who is a qualified beneficiary as the spouse of the covered employee shall be
treated as notification to all other qualified beneficiaries residing with such
spouse at the time such notification is made.”  See 42 U.S.C.A. §
300bb-6(4).  Therefore, whenever “individual” appears in subchapter XX, it
refers to a natural person.  In this context, we conclude that the term “individual”
as used in section 300bb-7 refers to natural persons and not to corporate
entities.

Clear
Lake further argues, “[I]f GISD’s interpretation was correct, individual
providers, like physicians, could seek recourse under the PHSA’s enforcement
provisions while hospitals could not.”  This argument is belied by the language
and purpose of subchapter XX.  Had Congress been concerned about hospitals and
doctors providing medical care without payment, it simply could have included
“healthcare providers” in section 300bb-7.  Instead, the purpose of section
300bb-7 is to afford those employees and beneficiaries injured by an employer’s
noncompliance with the subchapter a means of seeking equitable relief.

Finally,
Clear Lake appeals to the legislative history of COBRA.  However, we do not
consider the legislative history because we conclude the statute is
unambiguous.  See Fleming Foods of Texas, Inc. v. Rylander, 6 S.W.3d
278, 283–84 (Tex. 1999); St. Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997); see
also Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546,
567–69 (2005).

Accordingly,
we hold Clear Lake is not an “individual” under section 300bb-7 and thus, lacks
independent standing to pursue a claim for equitable relief under that
section.  Therefore, the trial court erred by denying GISD’s plea relative to
the PHSA claim.  We sustain its fourth issue.[5]

Based on
our resolution of the first, second, and fourth issues, we need not address
GISD’s third issue regarding waiver of immunity by conduct.

VII.   Conclusion

In sum,
we hold as follows: (1) GISD’s act of providing medical coverage was a governmental
function, (2) Clear Lake’s pleadings in support of its breach-of-contract claim
do not affirmatively demonstrate the trial court’s jurisdiction but do not
affirmatively negate jurisdiction, and (3) Clear Lake lacks independent
standing to bring its claim under the PHSA.  Accordingly, we reverse the trial
court’s denial of the jurisdictional challenge to Clear Lake’s
breach-of-contract claim and remand for further proceedings consistent with
this opinion, and we reverse the trial court’s denial of the challenge to Clear
Lake’s PHSA claim which we dismiss without prejudice for want of jurisdiction.

 

                                                                        

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

Panel consists of Justices Anderson,
Frost, and Seymore.









[1]
See Yancy v. United Surgical Partners Int’l, Inc., 236 S.W.3d
778, 786 n.6 (Tex. 2007) (explaining “writ refused” denotes that an opinion has the same precedential value as an opinion of the Texas Supreme
Court).





[2]
We have found no support for the proposition that healthcare providers such as
Clear Lake are ipso facto third-party beneficiaries of their patients’
health-insurance contracts with standing to enforce such contracts.  See
Hermann Hosp. v. Liberty Life Assur. Co. of Boston, 696 S.W.2d 37, 41 (Tex.
App.—Houston [14th Dist.] 1985, writ ref’d n.r.e.) (holding that mere fact
hospital would be ultimate recipient of health-insurance policy funds does not
make it third-party beneficiary of policy).





[3]
We note, however, that these decisions are not without detractors; several
courts have concluded that the term “individual” in the same statutes does
not include corporations.  See, e.g., In re Chateaugay Corp., 920
F.2d 183, 186–87 (2d Cir. 1990) (disagreeing that section 362 of the
Bankruptcy Code provides redress for corporate debtors); In re First RepublicBank
Corp., 113 B.R. 277, 278–79 (N.D. Tex. 1989) (same); Mujica v.
Occidental Petroleum Corp., 381 F. Supp. 2d 1164, 1176 (C.D. Cal.
2005) (disagreeing that the Torture Victim Protection Act authorizes a cause of
action against corporations); see also David Swarthout, When Is an
Individual a Corporation?—When the Court Misinterprets a Statute, That’s When!,
8 Am. Bankr. Inst. L. Rev. 151, 152 (2000).





[4]
Congress sensibly chose the term “persons” in section 300b-8 to describe those
that maintain the group health plan which includes corporate employers.  See
1 U.S.C.A. § 1 (“[T]he word[] ‘person’ . . . include[s] corporations,
companies, associations, firms, partnerships, societies, and joint stock
companies, as well as individuals[.]”).





[5]
As stated above, under Miranda, unless the pleadings affirmatively
negate jurisdiction, plaintiffs should be afforded an opportunity to amend.  See
Miranda, 133 S.W.3d at 227; see also Koseoglu, 233 S.W.3d at 840. 
Thus, when the addition of factual allegations could bring the claim asserted
within the trial court’s jurisdiction, we remand for the trial court to allow
the plaintiff a reasonable opportunity to amend its pleadings.  See Olivares,
316 S.W.3d at 95 (affording plaintiff an opportunity to amend when it was
unclear from the facts alleged whether the failure to install certain traffic
devices was the result of the State’s discretion or negligent implementation). 
Because we can conceive of no facts that might be alleged to support Clear
Lake’s independent standing to bring a PHSA claim, we dismiss the claim without
affording an opportunity to amend.  However, a dismissal due to lack of independent
standing is not a disposition on the merits and, thus, does not prevent Clear
Lake from bringing a PHSA claim on some other theory of standing.  See DaimlerChrysler
Corp. v. Inman, 252 S.W.3d 299, 307 (Tex. 2008) (explaining that
dismissal for lack of jurisdiction is not a final judgment on the merits).