**GALVESTON INDEPENDENT
SCHOOL DISTRICT,
Appellant,**

v.

**CLEAR LAKE REHABILITATION
HOSPITAL, L.L.C., Appellee.**

No. 14–09–00950–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 21, 2010.

Rehearing En Banc Overruled
Nov. 24, 2010.

Richard A. Morris, Jonathan Griffin Brush, Houston, for Appellant.

Gregory Marshall Sudbury, Dallas, Lane Odom, Fort Worth, for Appellee.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Clear Lake Rehabilitation Hospital, L.L.C. ("Clear Lake") filed suit against Galveston Independent School District ("GISD"), alleging breach of contract and violation of the federal Public Health Ser-

vice Act ("PHSA"). GISD filed a plea to the trial court's subject-matter jurisdiction over these claims, which was denied.

In four issues, GISD contends the trial court erred (1) to the extent it determined GISD's act of providing medical coverage was a proprietary, instead of a governmental, function, (2) by implicitly finding a waiver of governmental immunity relative to Clear Lake's breach-of-contract claim under Chapter 271 of the Local Government Code, (3) by implicitly finding GISD waived its governmental immunity by conduct, and (4) by failing to dismiss Clear Lake's claim under the PHSA.

We reverse that portion of the trial court's order denying GISD's plea relative to Clear Lake's breach-of-contract claim and remand for further proceedings consistent with this opinion. We also reverse that portion of the trial court's order denying the jurisdictional challenge to Clear Lake's PHSA claim and render judgment dismissing that claim for want of jurisdiction.

## I. BACKGROUND

In October 2006, Carlos Urroz, an employee with GISD, was placed on sick-leave pursuant to the Family and Medical Leave Act. On January 24, 2007, GISD sent Urroz a letter notifying him of the requirement to pay premiums "in order to keep coverage current." GISD sent a second letter on February 6, warning Urroz that his medical benefits would cease unless his premiums were received. The same day, GISD instructed its third-party administrator, Houston TPA, Ltd. d/b/a/ Trisurant ("Trisurant"), "to pend claims effective 2/1/07 until premium is received."

On February 8 and 9, Clear Lake contacted Trisurant to verify Urroz's coverage. Trisurant verified Urroz's coverage without advising that GISD had instructed

it to pend Urroz's claims. Thereafter, Urroz was admitted to Clear Lake and received treatment for six weeks.

On February 22, GISD sent Urroz another warning letter. On March 13, GISD informed Urroz that his medical coverage had been cancelled, effective February 1, and that he must contact GISD "by April 2, 2007, in order to enroll in COBRA[.]" When Clear Lake did not receive payment for Urroz's medical treatment, it demanded payment from GISD. GISD rejected Clear Lake's demand, explaining that it had complied with COBRA requirements. Clear Lake alleges that GISD considered Urroz an active employee until April 13, 2007.

Clear Lake filed suit against GISD, Trisurant, and Urroz, alleging a variety of tort claims. GISD filed a plea to the jurisdiction asserting governmental immunity. Clear Lake amended its petition to allege only claims for breach of contract and violations of the PHSA against GISD. Thereafter, GISD supplemented its plea, and Clear Lake filed a response. The trial court denied GISD's plea, and GISD timely filed this interlocutory appeal.

## II. INTERLOCUTORY APPEAL AND STANDARD OF REVIEW

We have statutorily-conferred authority to review the trial court's interlocutory order denying GISD's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (West 2008) (providing that a party may appeal an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit...."). An appellate court must consider challenges to the trial court's subject-matter jurisdiction on interlocutory appeal, regardless of whether such challenges were presented to or determined by the trial court. *Tex. Dep't of Transp. v. Olivares,* 316 S.W.3d 89, 95 (Tex.App.-Houston [14th

Dist.] 2010, no pet.) (citing *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 850–51 (Tex.2000)).

We review *de novo* the trial court's ruling on a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex.2004). In a plea to the jurisdiction, a party may challenge either the pleadings or existence of jurisdictional facts. *Id.* at 226–27; *see also* Rebecca Simmons & Suzette Kinder Patton, *Plea to the Jurisdiction: Defining the Undefined,* 40 St. Mary's L.J. 627, 651–52 (2009).

When a defendant challenges the plaintiff's pleadings, the court's determination turns on whether the pleader has alleged facts sufficient to demonstrate subject-matter jurisdiction. *Miranda,* 133 S.W.3d at 226. To make this determination, courts should glean the pleader's intent and construe the pleadings liberally in favor of jurisdiction. *Id.* If the pleadings do not contain facts sufficient to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and plaintiffs should be afforded an opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate jurisdiction, a plea may be granted without allowing plaintiffs an opportunity to amend. *Id.* at 227. The opportunity to amend pleadings that are insufficient to establish, but do not affirmatively negate, jurisdiction arises after a court determines the pleadings are insufficient. *White v. Robinson,* 260 S.W.3d 463, 475–76 (Tex.App.-Houston [14th Dist.] 2008, pet. granted) (citing *Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 839–40 (Tex.2007)).

When a defendant challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the par-

ties. *Miranda*, 133 S.W.3d at 227. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor. *Id.* at 228. If the relevant evidence is undisputed or a fact question is not raised relative to the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea, and the issue will be resolved by the fact finder. *Id.* at 227–28.

When resolution of an issue requires interpretation of a statute, we review under a *de novo* standard. *Mokkala v. Mead*, 178 S.W.3d 66, 70 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the legislature selected and should not refer to extraneous matters for intent not expressed in the statute. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997).

## III. GOVERNMENTAL AND PROPRIETARY FUNCTIONS

We begin with GISD's first issue in which it contends the trial court erred to the extent it determined GISD's provision of health insurance was not a governmental function.

■ Under our common law, governmental immunity defeats a trial court's subject-matter jurisdiction. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The proprietary/governmental dichotomy is generally used in determining a

municipality's governmental immunity from suit for tortious conduct. *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). "The distinction has not been a clear one, but generally speaking, a municipality's proprietary functions are those conducted 'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government,' while its governmental functions are 'in the performance of purely governmental matters solely for the public benefit.'" *Id.* (footnotes omitted). "A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions." *Id.*

■ Clear Lake contends that GISD's provision of health insurance to Urroz was a proprietary function for which GISD is not immune from a breach-of-contract claim. Clear Lake cites several cases in which courts held that a municipality's provision of insurance to its employees was a *proprietary* function. *See Gates v. City of Dallas*, 704 S.W.2d 737, 738–39 (Tex.1986) (holding that city "acted in its proprietary role" when it entered into a health-insurance contract with employee); *Temple v. City of Houston*, 189 S.W.3d 816, 821 (Tex. App.-Houston [1st Dist.] 2006, no pet.) ("We hold that when a City provides to its employees insurance benefits that are not required by statute, the City is performing a proprietary function...."); *Bailey v. City of Austin*, 972 S.W.2d 180, 193 (Tex. App.-Austin 1998, no pet.) ("[T]he City's function of offering, administering, and overseeing health care plans for its own employees are proprietary functions."). The rationale underlying these decisions is that a municipality acts "primarily for the benefit of those within the corporate limits of the municipality" by providing insurance

coverage for its employees. *Gates,* 704 S.W.2d at 739.

GISD responds that the foregoing cases apply only to municipalities, not school districts. GISD cites *Braun v. Trustees of Victoria Independent School District,* in which the court of appeals explained,

> Cities and towns exercise a dual function, to wit, governmental and proprietary, while a school district is purely a governmental agency and exercises only such powers as are delegated to it by the state. It performs no proprietary functions which are separate and independent of its governmental powers.

114 S.W.2d 947, 950 (Tex.Civ.App.-San Antonio 1938, writ ref'd). Because application for writ of error was refused, *Braun* has the same precedential value as an opinion of the Texas Supreme Court [1] and has been relied upon numerous times for the proposition that school districts engage only in *governmental* functions. *See, e.g., Fowler v. Tyler Indep. Sch. Dist.,* 232 S.W.3d 335, 339 (Tex.App.-Tyler 2007, pet. denied) (determining that a school district could not act "in a sufficiently proprietary capacity to shed its ... immunity at the time of [an] injury"); *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 594 (Tex.App.-Austin 1991, writ denied) ("An independent school district is an agency of the state which carries out only governmental functions, and, consequently, is entitled to governmental immunity."), *overruled on other grounds by Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401 (Tex.1997), *and superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 598 (Tex.2001); *Gravely v. Lewisville Indep. Sch. Dist.,* 701 S.W.2d 956, 957 (Tex.App.-Fort Worth 1986, writ ref'd

n.r.e.) ("No Texas appellate court, so far as we know, has ever held that a school district has served in a non-governmental capacity."). In *Murray v. San Jacinto Agency, Inc.,* the El Paso Court of Appeals addressed a comparable situation in which a school-district employee sued the school district for denying her coverage under a group healthcare plan. 759 S.W.2d 778 (Tex.App.-El Paso 1988), *rev'd on other grounds,* 800 S.W.2d 826 (Tex.1990). Referencing *Braun,* the court held "that the establishment of the self funded group medical insurance program by [the school district] is a governmental function and that governmental immunity applies." *Id.* at 779–80.

Clear Lake contends these cases are distinguishable because they involve tort claims for injuries that occurred while school districts were engaged in the governmental function of furthering education, whereas the underlying case arises from a breach of contract between a school district and hospital. Clear Lake avers its case is more akin to *Teague Independent School District v. Mason,* where the court held that a school district was estopped from denying liability to an attorney who provided legal services to the school district. 233 S.W.2d 176, 180 (Tex.Civ.App.-Waco 1950, writ ref'd n.r.e.). We do not find the breach-of-contract versus tort claim distinction pivotal because governmental entities regularly execute contracts for governmental purposes. Furthermore, as discussed in more detail in the following section, our legislature allows certain breach-of-contract claims against public school districts. *See* Tex. Loc. Gov't Code Ann. §§ 271.151–.160 (West 2005 & Supp. 2009).

---

1. *See Yancy v. United Surgical Partners Int'l, Inc.,* 236 S.W.3d 778, 786 n. 6 (Tex.2007) (explaining "writ refused" denotes that an opinion has the same precedential value as an opinion of the Texas Supreme Court).

Clear Lake also argues several courts have implied that school districts may engage in both governmental and proprietary functions. In *Barr v. Bernhard,* the supreme court explained, "The law is well settled in this state that an independent school district is an agency of the state and, *while exercising governmental functions,* is not answerable for its negligence in a suit sounding in tort." 562 S.W.2d 844, 846 (Tex.1978) (emphasis added); *see also, e.g., Bell v. Love,* 923 S.W.2d 229, 231 (Tex.App.-Houston [14th Dist.] 1996, no writ). Notably, the *Braun* opinion includes the same language: "There can be no question but that an independent school district is an agency of the state, and, *while exercising governmental functions,* is not answerable for its negligence in a suit sounding in tort." 114 S.W.2d at 949 (emphasis added). Clear Lake argues that courts would not have included the qualifying language "while exercising governmental functions" unless school districts had the capacity to engage in non governmental functions. The same argument was presented to the First Court of Appeals. *See McManus v. Anahuac Indep. Sch. Dist.,* 667 S.W.2d 275, 278 (Tex.App.-Houston [1st Dist.] 1984, no writ). Our sister court described the argument as "well reasoned" but resolved the issue on other grounds. *Id.*

■ Like the court in *McManus,* we need not address the precedential effect of the *Braun* opinion. Presuming that school districts can participate in non-governmental functions, we conclude that providing health insurance to employees is a governmental function of a school district. Under the Texas Education Code, school districts are *required* to offer medical coverage to all employees, whether by self-insuring or some other means. *See* Tex. Educ.Code Ann. § 22.004(a)-(b) (West Supp.2009). A city engages in govern-

mental functions when it " 'performs functions mandated by the state.' " *See Temple,* 189 S.W.3d at 820 (*quoting Truong v. City of Houston,* 99 S.W.3d 204, 210 (Tex. App.-Houston [1st Dist.] 2002)). This rule should likewise apply to school districts. Furthermore, that GISD had a choice regarding how it provided coverage does not mean its exercise of that choice was a nongovernmental function. *See Wallace v. City of Midland,* 836 S.W.2d 641, 643 (Tex.App.-El Paso 1992, writ denied) ("The furnishing of workers' compensation coverage by one means or another by a municipality to its employees is mandated by law and as such, the means by which the municipality complies remains a governmental function."). Finally, we note that provision of group healthcare furthers the state's educational goals because school districts are able to attract more-qualified employees. *Cf. Braun,* 114 S.W.2d at 950 (concluding that beautifying school grounds furthers education). Accordingly, we hold that GISD did not exercise a proprietary function by providing health insurance to Urroz. GISD's first issue is sustained.

## IV. SECTION 271.152 OF THE LOCAL GOVERNMENT CODE

In its second issue, GISD contends the trial court erred by concluding that GISD is not immune from suit relative to Clear Lake's breach-of-contract claim. Clear Lake contends that GISD's immunity from suit has been waived pursuant to subchapter I, chapter 271 of the Local Government Code.

Under subchapter I, "A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract...." Tex.

Loc. Gov't Code Ann. § 271.152 (West 2005). " 'Contract subject to this subchapter' means a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2). "Local governmental entity" under subchapter I includes public school districts such as GISD. *Id.* § 271.151(3)(B).

GISD argues that "Clear Lake has not identified, and cannot identify, any written contract between it and GISD wherein Clear Lake was obligated to provide goods or services to [GISD]. Since no such contract exists, Chapter 271 ... does not apply and Clear Lake's claims must be dismissed...." Furthermore, GISD argues that even if a written contract between GISD and Urroz existed, Clear Lake cannot establish "it was an intended third-party beneficiary to such a contract."

▬▬▬ As an initial matter, we note the parties assume section 271.152 permits a third-party beneficiary to sue a local governmental entity for breach of contract. A third party has standing to enforce a contract when contracting parties explicitly intend to benefit the third party. *S. Tex. Water Auth. v. Lomas,* 223 S.W.3d 304, 306 (Tex.2007) (per curiam). Under section 271.152, governmental immunity is waived relative to claims for breach of contract subject to subchapter I. *See* Tex. Loc. Gov't Code Ann. § 271.152 ("A local government entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to the suit for *the purpose of adjudicating a claim for breach of the contract,* subject to the terms and conditions of this subchapter."). Accordingly, when a governmental entity and a contracting party enter into a contract subject

to subchapter I and denominate a third-party beneficiary of that contract, the third-party beneficiary's claim for breach of contract falls within the waiver of immunity authorized under section 271.152. *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund,* 212 S.W.3d 320, 327 (Tex.2006) ("[B]y enacting section 271.152, the Legislature intended to loosen the immunity bar so 'that all local government entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts.' " (quoting House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005))); *First–Citizens Bank & Trust Co. v. Greater Austin Area Telecomm. Network,* 318 S.W.3d 560, 567 (Tex. App.-Austin 2010, no pet. h.) (explaining that "section 271.152's waiver is not limited only to suits brought by signatory parties ... [but applies to] a *class of suits*—suits for the purpose of adjudicating a claim for breach of a contract subject to subchapter I—without restricting which parties can bring the suit.").

In its live pleadings, Clear Lake alleges Urroz "was covered by GISD's health insurance plan," which entitled him "to coverage while he was an active employee." Clear Lake further alleges that Urroz was employed by GISD until April 13, 2007. Clear Lake argues that GISD's health-insurance contract with Urroz was a written contract "providing goods or services to the local governmental entity" because Urroz received coverage in exchange for the services he provided GISD as an active employee. Interpreting the pleadings liberally in favor of jurisdiction, we agree with Clear Lake's argument. Thus, Clear Lake has sufficiently alleged that GISD and Urroz were parties to a written contract in which they agreed to exchange

services (medical coverage for employment services) while Urroz was an active employee.

However, Clear Lake's allegation, "Pursuant to Clear Lake's financial agreement with [Urroz], and by operation of law, Clear Lake is a third party beneficiary of [Urroz's] insurance contract with GISD," does not sufficiently demonstrate that Clear Lake is a third-party beneficiary of the alleged contract between Urroz and GISD. There is a general presumption against third-party beneficiaries to a contract, and the facts alleged do not support the contention that GISD and Urroz intended to confer a direct benefit on Clear Lake. *See Lomas,* 223 S.W.3d at 306; *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex.1999) (expressing that absent clear indication in written contract that parties intended to confer direct benefit to third party, third party cannot maintain breach-of-contract action); *see also H & H Sand and Gravel Inc. v. City of Corpus Christi,* No. 13–06–00677–CV, 2007 WL 3293628, at *4 (Tex.App.-Corpus Christi Nov. 8, 2007, pet. denied) (mem. op.) ("We do not see how H & H Sand's allegation of unilateral modification establishes a waiver of governmental immunity under [section 271.152's] requirement that a contract be 'properly executed on behalf of the local governmental entity.'"). Further, Clear Lake's bare assertion that it is a third-party beneficiary "by operation of law" does not support such standing.[2] Accordingly, Clear Lake's breach-of-contract claim under section 271.152 does not affirmatively demonstrate a waiver of GISD's governmental immunity.

Finally, GISD presents two evidentiary arguments. First, GISD contends dismissal is required because (1) the record does not include the alleged health-insurance contract between GISD and Urroz and (2) even if a written contract between GISD and Urroz existed, Clear Lake cannot establish it was a third-party beneficiary to the contract. *See Vantage Sys. Design, Inc. v. Raymondville Indep. Sch. Dist.,* 290 S.W.3d 312, 316 (Tex.App.-Corpus Christi 2009, pet. filed) (holding that plaintiff failed to prove waiver of immunity pursuant to section 271.152 because it failed to produce written contract). However, GISD did not present an evidentiary challenge in its plea. Therefore, Clear Lake was not required to produce the written contract or prove that Clear Lake was a third-party beneficiary to the contract. Moreover, even if GISD presented a "no-evidence" challenge regarding the existence of the contract and Clear Lake's third-party beneficiary status, Clear Lake would not have had a burden to present evidence raising a fact issue regarding such matters; under *Miranda,* a governmental entity's challenge to jurisdictional facts implicating the merits of the plaintiff's lawsuit mirrors traditional summary-judgment practice, not no-evidence summary-judgment practice. *See Miranda,* 133 S.W.3d at 228; *see also Olivares,* 316 S.W.3d at 95.

Second, GISD argues that even if Clear Lake were a third-party beneficiary of an insurance contract between GISD and Urroz, Clear Lake has no greater right to enforce the contract than Urroz, who has no right to enforce the contract because of his failure to pay the required premiums.

---

**2.** We have found no support for the proposition that healthcare providers such as Clear Lake are *ipso facto* third-party beneficiaries of their patients' health-insurance contracts with standing to enforce such contracts. *See Hermann Hosp. v. Liberty Life Assur. Co. of Bos-* *ton,* 696 S.W.2d 37, 41 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.) (holding that mere fact hospital would be ultimate recipient of health-insurance policy funds does not make it third-party beneficiary of policy).

Because these issues involve questions of fact not conclusively answered in the record, we must disagree. *See Miranda,* 133 S.W.3d at 227–28. Thus, we reject GISD's evidentiary challenges.

Accordingly, Clear Lake's pleadings do not affirmatively demonstrate the trial court's jurisdiction over its breach-of-contract claim, but do not affirmatively negate jurisdiction. Therefore, we reverse the trial court's order denying GISD's plea relative to Clear Lake's breach-of-contract claim and remand for the trial court to allow Clear Lake a reasonable opportunity to amend its pleadings. *See Miranda,* 133 S.W.3d at 226–27; *see also Koseoglu,* 233 S.W.3d at 839–40.

### V. PUBLIC HEALTH SERVICE ACT

In its fourth and final issue, GISD contends the trial court erred by concluding that Clear Lake has standing to assert a claim under subchapter XX of the federal Public Health Service Act ("PHSA"). *See* 42 U.S.CA. §§ 300bb–1–300bb–8 (West 2003 & Supp.2010).

When the United States Congress enacted the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), it amended the PHSA by adding subchapter XX. *See Mehmen v. Collin County, Tex.,* 558 F.Supp.2d 711, 714 (E.D.Tex.2007). Under subchapter XX, certain governmental entities that maintain group healthcare plans must provide qualified beneficiaries who would otherwise lose coverage under the plan due to a qualifying event the right to elect continuation of their coverage. 42 U.S.C.A. § 300bb–1(a) (West 2003). The term "qualifying event" includes "[t]he termination ·... of the covered employee's employment." *Id.* § 300bb–3(2) (West 2003). The employer "must notify the plan administrator of a qualifying event ... within 30 days of the ... event," and the plan administrator must notify any qualified beneficiaries of the event. *Id.* § 300bb–6(2), (4) (West 2003). Importantly, "[a]ny *individual* who is aggrieved by the failure of a [governmental entity] to comply with the requirements of the subchapter may bring an action for appropriate equitable relief." *Id.* § 300bb–7 (West 2003) (emphasis added). The term "individual" is not defined in subchapter XX or in the general definitions section of the PHSA.

GISD contends Clear Lake lacks independent standing to seek equitable relief under section 300bb–7 because it is a limited liability corporation and, therefore, not an "individual." Clear Lake argues that any natural person or organization aggrieved by a governmental entity's failure to comply with subchapter XX may seek relief pursuant to section 300bb–7. In support of this argument, Clear Lake cites federal authority in which the term "individual" has been interpreted to include corporations.

In *Clinton v. City of New York,* 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998), the United States Supreme Court considered whether the term "individual" in a section of the former Line Item Veto Act included corporations: " 'Any member of Congress or any *individual* adversely affected' by the Act" may bring an action contesting the constitutionality of the Act. *Id.* at 428, 118 S.Ct. 2091 (quoting former 2 U.S.C. § 692(a)(1)). The Court determined "that in the context of the entire section Congress undoubtedly intended the word 'individual' to be construed as synonymous with the word 'person,' " a word that includes "corporations." *Id.* at 428–29 & n. 13, 118 S.Ct. 2091. The Court explained that the purpose of the section was to authorize "prompt and authoritative judicial determination of the constitutionality of the Act" and reasoned "[t]here is no plausible reason why Congress would have

intended to provide for such special treatment of actions filed by natural persons and ... [not] corporate persons." *Id.* at 42, 118 S.Ct. 2091. Thus, the Court interpreted the term "individual" from its context within the Line Item Veto Act.

Other opinions cited by Clear Lake were authored by courts interpreting the term "individual" as prescribed in the Bankruptcy Code and Torture Victim Protection Act. Several courts have held that section 362 of the Bankruptcy Code, which requires redress for "[a]n individual injured by any willful violation of a stay," to apply to both natural persons and corporations. *See In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir.1990); *Budget Serv. Co. v. Better Homes of Va.*, 804 F.2d 289, 292 (4th Cir.1986); *In re Tel–A–Commc'ns Consultants, Inc.*, 50 B.R. 250, 253–54 (Bankr.D.Conn.1985). The courts derived this interpretation by considering section 362(h) in light of the whole section, which they concluded clearly applies to *all* bankruptcy debtors. *See Budget Serv.*, 804 F.2d at 292; *In re Tel–A–Commc'ns Consultants*, 50 B.R. at 254. Similarly, courts have held that the section of the Torture Victim Protection Act establishing a right to civil action against "[a]n individual who ... subjects an individual to torture [or] ... to extrajudicial killing ...," applies to both natural persons and corporations that perpetrate such acts. *See Romero v. Drummond Co.*, 552 F.3d 1303, 1315 (11th Cir.2008) ("[T]he Torture Act allows suits against corporate defendants."); *Sinaltrainal v. Coca–Cola Co.*, 256 F.Supp.2d 1345, 1358 (S.D.Fla.2003) (relying on legislative history to determine that term "individual" used in Torture Victim Protection Act includes corporations).[3] Therefore, Clear Lake's exposition of caselaw illustrates that federal courts have construed the term "individual" to include corporations in the context of other statutes. However, our research reveals no case addressing whether "individual" as used in section 300bb–7 includes corporate entities, and we must examine the statute to determine that issue.

 Reading subchapter XX as a whole, it is clear Congress intended to protect government employees and their beneficiaries from sudden loss of healthcare coverage following a qualifying event such as a termination. The terms "covered employees" and "qualified beneficiaries" are used frequently throughout the subchapter. "Covered employee" is defined as "an *individual* who is (or was) provided coverage under a group health plan by virtue of the performance of services by the *individual* for 1 or more *persons*[4] maintaining the plan[.]" *See* 42 U.S.C.A. § 300bb–8(2) (emphasis added). "Qualified beneficiary" is defined in the subchapter as, "with respect to a covered

---

3. We note, however, that these decisions are not without detractors; several courts have concluded that the term "individual" in the same statutes *does not* include corporations. *See, e.g., In re Chateaugay Corp.*, 920 F.2d 183, 186–87 (2d Cir.1990) (disagreeing that section 362 of the Bankruptcy Code provides redress for corporate debtors); *In re First RepublicBank Corp.*, 113 B.R. 277, 278–79 (Bankr.N.D.Tex.1989) (same); *Mujica v. Occidental Petroleum Corp.*, 381 F.Supp.2d 1164, 1176 (C.D.Cal.2005) (disagreeing that the Torture Victim Protection Act authorizes a cause of action against corporations); *see also*

David Swarthout, *When Is an Individual a Corporation?—When the Court Misinterprets a Statute, That's When!*, 8 Am. Bankr.Inst. L. Rev. 151, 152 (2000).

4. Congress sensibly chose the term "persons" in section 300bb–8 to describe those that maintain the group health plan which includes corporate employers. *See* 1 U.S.C.A. § 1 ("[T]he word [] 'person' ... include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals[.]").

employee under a group health plan, any other *individual* who, on the day before the qualifying event for that employee, is a beneficiary under the plan—(i) as the spouse of the covered employee, or (ii) as the dependent child of the employee." *See* 42 U.S.C.A. § 300bb–8(3) (emphasis added). Thus, those whom the subchapter was designed to assist are defined as "individuals" in a manner applicable only to natural persons. Other sections of the subchapter refer to "individuals" in a similar sense. "Individual" in section 300bb–2(3) references disabled qualified beneficiaries. *See* 42 U.S.C.A. § 300bb–2(3). There are several references to the term "TAA-eligible individuals," which is defined in the Internal Revenue Code in a manner only appropriate to natural persons. *See* 42 U.S.C.A. § 300bb–5(b)(4); 26 U.S.C.A. § 35(a), (c) (West Supp.2010). Moreover, the language in section 300bb–6(4) expresses, "[N]otification to an *individual* who is a qualified beneficiary as the spouse of the covered employee shall be treated as notification to all other qualified beneficiaries residing with such spouse at the time such notification is made." *See* 42 U.S.C.A. § 300bb–6(4). Therefore, whenever "individual" appears in subchapter XX, it refers to a natural person. In this context, we conclude that the term "individual" as used in section 300bb–7 refers to natural persons and not to corporate entities.

Clear Lake further argues, "[I]f GISD's interpretation was correct, individual providers, like physicians, could seek recourse under the PHSA's enforcement provisions while hospitals could not." This argument is belied by the language and purpose of subchapter XX. Had Congress been concerned about hospitals and doctors providing medical care without payment, it simply could have included "healthcare providers" in section 300bb–7. Instead, the purpose of section 300bb–7 is to afford those employees and beneficiaries injured by an employer's noncompliance with the subchapter a means of seeking equitable relief.

Finally, Clear Lake appeals to the legislative history of COBRA. However, we do not consider the legislative history because we conclude the statute is unambiguous. *See Fleming Foods of Texas, Inc. v. Rylander,* 6 S.W.3d 278, 283–84 (Tex.1999); *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 567–69, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).

■ Accordingly, we hold Clear Lake is not an "individual" under section 300bb–7 and thus, lacks independent standing to pursue a claim for equitable relief under that section. Therefore, the trial court erred by denying GISD's plea relative to the PHSA claim. We sustain its fourth issue.[5]

5. As stated above, under *Miranda,* unless the pleadings affirmatively negate jurisdiction, plaintiffs should be afforded an opportunity to amend. *See Miranda,* 133 S.W.3d at 227; *see also Koseoglu,* 233 S.W.3d at 840. Thus, when the addition of factual allegations could bring the claim asserted within the trial court's jurisdiction, we remand for the trial court to allow the plaintiff a reasonable opportunity to amend its pleadings. *See Olivares,* 316 S.W.3d at 95 (affording plaintiff an opportunity to amend when it was unclear from the facts alleged whether the failure to

install certain traffic devices was the result of the State's discretion or negligent implementation). Because we can conceive of no facts that might be alleged to support Clear Lake's independent standing to bring a PHSA claim, we dismiss the claim without affording an opportunity to amend. However, a dismissal due to lack of independent standing is not a disposition on the merits and, thus, does not prevent Clear Lake from bringing a PHSA claim on some other theory of standing. *See DaimlerChrysler Corp. v. Inman,* 252 S.W.3d

Based on our resolution of the first, second, and fourth issues, we need not address GISD's third issue regarding waiver of immunity by conduct.

## VI. CONCLUSION

In sum, we hold as follows: (1) GISD's act of providing medical coverage was a governmental function, (2) Clear Lake's pleadings in support of its breach-of-contract claim do not affirmatively demonstrate the trial court's jurisdiction but do not affirmatively negate jurisdiction, and (3) Clear Lake lacks independent standing to bring its claim under the PHSA. Accordingly, we reverse the trial court's denial of the jurisdictional challenge to Clear Lake's breach-of-contract claim and remand for further proceedings consistent with this opinion, and we reverse the trial court's denial of the challenge to Clear Lake's PHSA claim which we dismiss without prejudice for want of jurisdiction.

299, 307 (Tex.2008) (explaining that dismissal for lack of jurisdiction is not a final judgment on the merits).