**Reversed and Rendered and Memorandum Opinion filed October 18, 2011.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00192-CV

**CITY OF GALVESTON, Appellant**

**V.**

**GALVESTON MUNICIPAL POLICE ASSOCIATION, JIMMY DE LOS SANTOS AND ROBERT SANDERSON, Appellees**

**On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause No. 10-CV-4089**

## MEMORANDUM OPINION

Appellees Jimmy De Los Santos, Robert Sanderson, and the Galveston Municipal Police Association sued the City of Galveston and the City's former police chief, Charles Wiley. The City appeals from the trial court's denial of the City's plea to the jurisdiction. The City contends that the trial court lacks subject matter jurisdiction because there is no live controversy between the parties. We reverse and render judgment dismissing appellees' claims against the City.

**BACKGROUND**

The City announced in August 2010 that it would be laying off police officers and firefighters because of budget constraints. In response, the Association's board of directors[1] discussed a public information campaign to address the issue; the Association contemplated advertising and addressing the City Council directly. Appellees alleged in their petition that on or about September 22, 2010:

> Defendant WILEY interrogated each Plaintiff, and other members of the Board of GMPA, concerning the activities of the GMPA, specifically asking if the association was going to erect a billboard regarding the lay offs. Defendant WILEY used threats and intimidation towards each of the Plaintiffs in an attempt to dissuade the GMPA from representing the members. . . . WILEY's conduct was done to intimidate the GMPA Board Members and the organization as a whole.

Appellees also alleged that Wiley sent an e-mail to all Galveston Police Department employees on September 23:

> WILEY referred to "labor goon tactics" and broadly threatened that "any such conduct will result in swift and certain action for those offenders." Wiley went on to state that the administration was trying to determine who was involved and encouraged others to report rumors.

The City Council allowed discussion of the budget and layoffs on September 23, and both Wiley and Sanderson were present. Sanderson alleged that he had planned to address the City Council on behalf of the Association but refrained from doing so because of Wiley's "threats and intimidation." According to the allegations, Wiley told Sanderson that if the Association was "going to speak to City Council it needed to come through him first so that he did not have to hear this GMPA crap anymore." The City Council approved the layoffs that same day.

---

[1] De Los Santos is president of the Association, and Sanderson is vice president.

Appellees sued the City on November 3, 2010 for declaratory and injunctive relief for violations of Section 101.301 of the Labor Code, Section 617.005 of the Government Code, and Chapter 174 of the Local Government Code.[2] Appellees sought an order "enjoining the Defendants from violating their rights under the aforesaid statutes by denying the Plaintiffs the right to represent the police officers of the Galveston Police Department and to be free from threats, force, intimidation and coercion in that representation." They also asked the court to declare that "the Defendants [sic] conduct of compelling the GMPA Board members to appear and answer questions regarding the activities of the GMPA violates the rights of the Plaintiffs," and that the "e-mail order . . . is a violation of the Texas Labor Code and Texas Government Code as cited herein."

The City filed a plea to the jurisdiction, contending that the trial court lacked jurisdiction because appellees' claims were moot and each appellee lacked standing. The court denied the plea, and the City appealed. While this appeal was pending, Wiley retired from the police department.

## ANALYSIS

In its first issue, the City argues that the trial court lacks subject matter jurisdiction because there is no justiciable controversy between appellees and the City. We agree.

## I. Standard of Review

Issues of justiciability, such as mootness, ripeness, and standing, implicate a court's subject matter jurisdiction. *See Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442–43 (Tex. 1998); *David Powers Homes, Inc. v. M.L. Rendleman Co.*, No. 01-10-00967-CV, __ S.W.3d __, 2011 WL 3612308, at *4–5 (Tex. App.—Houston [1st Dist.] Aug., 18, 2011, no pet. h.). The absence of a court's jurisdiction may be raised by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). When a plea to the jurisdiction challenges the

---

[2] Appellees also sued Wiley individually seeking a declaration, injunction, and monetary damages. Those claims are not before us in this appeal.

pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in the pleader's favor, and we review the trial court's ruling de novo. *Id.*

## II. Principles of Justiciability: Standing, Mootness, and Ripeness

Texas courts lack jurisdiction to render advisory opinions. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). When there is no live controversy between the parties, an opinion is advisory "because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury." *See id.* A controversy must exist between the parties at every stage of a legal proceeding for Texas courts to have jurisdiction. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2000). The overlapping doctrines of standing, mootness, and ripeness relate to whether an appropriate party has brought suit at an appropriate time so that there is an actual, live controversy between the parties. These justiciability doctrines stem from the prohibition on court-issued advisory opinions. *Patterson*, 971 S.W.2d at 442.

Standing concerns ***who*** may bring an action. *Id.* "The general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'" *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955)). A plaintiff lacks standing if his or her "claim of injury is too slight for a court to afford redress." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008).

Ripeness concerns ***when*** an action may be brought. *Patterson*, 971 S.W.2d at 442. This doctrine requires that "the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id.* A controversy is not ripe when resolution depends on contingent or hypothetical facts. *Id.* at 443.

4

Mootness concerns the cessation of what was once a live controversy between the parties. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 865 (Tex. 2010); *Williams*, 52 S.W.3d at 184. A controversy ceases to exist and a case becomes moot if the parties lack a "'legally cognizable interest in the outcome.'" *Williams*, 52 S.W.3d at 184 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "'Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* (alteration in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Even if a case becomes moot, however, a plaintiff may continue to maintain suit if the plaintiff proves: "(1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again." *Id.* This is the "capable of repetition yet evading review" exception to the mootness doctrine. *Id.*

## III.    No Justiciable Controversy

Appellant argues this case is moot because all of the complained-of conduct by Wiley (1) occurred in September 2010; and (2) dealt with staff layoffs — an issue the City Council resolved on September 23, 2010. Further, the parties agreed at oral argument that Wiley retired from the police department while this appeal was pending. Appellees contend the case is not moot and point to Wiley's September 2010 e-mail, in which he said that the Association's proposed advertising campaign was intolerable and would result in "swift and certain disciplinary action" for anyone "who might consider such a thing." Appellees contend the e-mail represents an ongoing City policy.

Regardless of whether the issue in this case is framed as one of standing, ripeness, or mootness, we hold there is no justiciable controversy between the City and appellees. Even if it is assumed that a live controversy existed at the inception of this lawsuit, Wiley's retirement as police chief bolsters the conclusion that no live controversy now exists.

The parties direct us to the decision in *City of Round Rock v. Rodriguez*, 317 S.W.3d 871 (Tex. App.—Austin 2010, pet. granted). In that case, the Austin Court of Appeals concluded that the "capable of repetition yet evading review" exception to the mootness doctrine applied when: (1) the City of Round Rock had denied the firefighter association members' requests for representation at investigatory interviews on multiple occasions in 2006 and 2008; (2) the fire chief conveyed the city's opinion to the association that members' requests for representation would be denied; and (3) the city continued to assert that the association members had no right to representation during investigatory interviews. *See id.* at 879–80. The court concluded that it was reasonable to expect that the association members would be subjected to the same actions again, and so an exception to the mootness doctrine applied. *Id.* at 879. We find the *Rodriguez* case distinguishable.

Here, appellees' petition focuses on specific incidents concerning a specific issue that was resolved by the City Council in September 2010. Appellees have not alleged that Wiley's promise of "swift and certain disciplinary action" has ever been enforced, or that any alleged threats have caused police officers to refrain from engaging in any protected conduct other than Sanderson's one-time decision to not speak at the City Council meeting on September 23, 2010. Appellees have not alleged they intend to go forward with an advertising campaign critical of the staff layoffs. They do not request any relief in that regard. And unlike *Rodriguez*, the City asserts that "the City disclaims the existence of a Standing Order" created by Wiley's conduct in this matter. The retirement of the e-mail's author defeats reliance upon that e-mail to establish a continuing controversy.

Although appellees have requested declaratory and injunctive relief — generally considered prospective relief — the petition reveals that any such relief in this case would be solely retrospective in application. Appellees request an injunction to prevent the City from denying appellees the rights "to represent the police officers . . . and to be free from threats, force, intimidation and coercion in that representation." Yet the petition does not

allege circumstances involving the threatened or likely denial of such rights in the future, particularly in Wiley's absence. No cognizable "continuing, present adverse effects" are alleged. *See Williams*, 52 S.W.3d at 184.

Appellees further request declarations that the e-mail is a violation of the Labor Code and Government Code, and that the City's "conduct of compelling the [Association's] Board members to appear and answer questions regarding the activities of the [Association] violates the rights of [appellees]." The petition references a single instance of Wiley interrogating appellees about the Association's activities; Wiley "specifically ask[ed] if the Association was going to erect a billboard regarding the lay offs." There is no allegation that this conduct persisted after the City Council approved the layoffs one day later, nor is there any allegation that the City has a practice or policy of interrogating the Association's members. Simply put, there is no live controversy to be resolved by the requested declarations. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) ("A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought."); *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994) ("A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit."); *Tex. Ass'n of Bus.*, 852 S.W.2d at 444 ("[T]he Uniform Declaratory Judgments Act [is] merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions.").

Appellees' requests for declaratory relief cannot change the basic character of this suit: a complaint about past conduct. Appellees' requested relief would be purely advisory. Thus, there is no live controversy between the parties, and appellees have not alleged facts that affirmatively demonstrate the court's jurisdiction.

The City's first issue is sustained.

7

## CONCLUSION

Having sustained the City's first issue, we reverse the trial court's denial of the City's plea to the jurisdiction and render judgment dismissing appellees' claims against the City. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex. 2007); *Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp., L.L.C.*, 324 S.W.3d 802, 814 n.5 (Tex. App.—Houston [14th Dist.] 2010, no pet.).[3]


/s/    William J. Boyce
          Justice


Panel consists of Justices Brown, Boyce, and McCally.

---

[3] A dismissal for lack of jurisdiction is not a final judgment on the merits; thus, appellees will not be prevented from refiling if a live controversy eventually develops. *See Galveston Indep. Sch. Dist.*, 324 S.W.3d at 814 n.5.